**In the Matter of W.E. ROSS, a/k/a Walter E. Ross, a/k/a Eugene Ross and Elizabeth W. Ross, Individually and Jointly and d/b/a W.E. Ross Farms & Ranch, Debtors.**

Civ. A. No. 88–82–VAL (WDO).

United States District Court, M.D. Georgia, Valdosta Division.

Nov. 17, 1988.

Jerome K. Kaplan, Wesley J. Boyer, Macon, Ga., for appellants.

Terrance J. Paulk, Fitzgerald, Ga., for debtor.

OWENS, Chief Judge:

This matter is before the court on appeal from the United States Bankruptcy Court for the Middle District of Georgia, Valdosta Division. In a memorandum opinion and order filed on July 12, 1988, the Honorable Robert F. Hershner, Jr., United States Bankruptcy Judge, reduced from $77,-452.52 to $38,726.26 the attorney's fees to which Mr. John T. Croley, Jr., attorney for the trustee, was entitled to receive for the efforts he expended in the Chapter 7 case involving debtors Mr. W.E. Ross and Mrs. Elizabeth Ross. 88 B.R. 471. The original amount was disbursed on December 30, 1983, by the trustee, Mr. C. George Newbern.[1] Appellants include not only Mr. Croley but also the law firm of Jay, Garden, Sherrell, Smith & Croley.

### Facts [2]

Debtors W.E. and Elizabeth Ross owned a twenty-five percent (25%) interest in a closely-held corporation, W.E. Ross and Sons, Inc. When debtors' financial condi-tion deteriorated, they sought and received advice from a relative, Mr. Terence Paulk, who subsequently contacted appellant Croley. After some discussion, Mr. Croley suggested that debtors file a bankruptcy petition in an effort to force the dissolution of the corporation. Appellant Croley, when asked to represent the debtors, conditioned his representation upon. two conditions: first, debtors' filing in bankruptcy; and (2) the trustee's willingness to retain Mr. Croley on a contingency fee basis. On March 16, 1983, debtors filed a joint petition in bankruptcy, and on April 7, 1983, Mr. Newbern entered into an agreement with Mr. Croley, employing him as the trustee's attorney and setting appellant Croley's compensation at one-third of the net recovery to the bankruptcy estate. The April 7th fee agreement executed by trustee Newbern and appellant Croley contained the following provision:

WHEREAS, the recovery and liquidation of said assets may well require substantial litigation and discovery and there is a risk of no recovery of any of said assets unless the claims of the trustee herein in and to the same are pursued vigorously, and

WHEREAS, it further appears that there is substantial risk that the recovery thereof may be limited and that the only feasible method of employing legal counsel to pursue said claims is on a contingency basis and that to so employ counsel is in the best interests of the debtors, the creditors, the trustee, and the estate of the debtors;

NOW, THEREFORE, the aforesaid C. GEORGE NEWBERN, as trustee, hereby employs the firm of JAY, GARDEN, SHERRELL, SMITH & CROLEY, with JOHN T. CROLEY, JR., of said firm as main counsel, for the purpose of collection, recovery, and liquidation of all assets of the aforesaid debtors, not otherwise exempt, for the benefit of the estate

---

**1.** At the time of the original disbursement, Judge Algie M. Moseley presided over the Valdosta Division of the Middle District of Georgia.

**2.** The majority of the facts are not in dispute. *See* Memorandum Opinion and Order of Bank-ruptcy Court ("Bankruptcy Order"); Appellants' Brief, pp. 8–14; Brief of Walter W. Kelley, Successor Trustee, pp. 1–4. Thus, this court will present only those facts relevant to the determination made herein.

of said debtors. Said attorneys shall be compensated on a contingent fee basis of ⅓ of the net recovery to the estate with regard to said assets....

The Petition to Allow Employment of Counsel was inexplicably delayed and finally filed in the bankruptcy court on August 4, 1983, and that petition incorporated the April 7th fee agreement executed by appellant Croley and Trustee Newbern. Judge Moseley signed an order appointing Mr. Croley as counsel on the same day, August 4, 1983. However, prior both to the filing of the petition to employ Mr. Croley and to Judge Moseley's order approving same, a sales agreement was executed between the trustee, Mr. Newbern, and the debtors' sons in which the debtors' sons agreed to purchase from Mr. Ross his share of the closely-held corporation for the purchase price of $500,000.00. The notice of sale of debtors' interest in the corporation, though dated September 16, 1983, was filed by the trustee on September 1, 1983. The sale occurred on October 18, 1983; a report of sale was filed on November 28, 1983.

Mr. Newbern filed a notice of proposed disbursements on December 6, 1983. This notice provided for the payment to unsecured creditors on the basis of sixty cents ($.60) per dollar and for the payment to Mr. Croley of attorney's fees and expenses in the amounts of $77,452.52 and $1,024.42 respectively. The attorney's fees represented twenty per cent (20%) of the net recovery to the bankruptcy estate, a voluntary reduction suggested by Mr. Croley from the thirty-three per cent (33%) originally agreed upon in the April 7th fee agreement.

Also on December 6, 1983, Mr. Newbern submitted to Judge Moseley a proposed order authorizing the award to appellant Croley of attorney's fees in the amount of $77,452.52. That proposed order is marked through, and an attached handwritten note reads as follows: "Unless there is some [objection] filed to this then there is no need of my signing the order. In any event [it is] not necessary until 20 days after [December] 6, 1983." The note is initialed by Judge Moseley. *See* Record on Appeal, Docket No. 13.

Objections were in fact filed during the twenty-day period. Three unsecured creditors objected to the proposed attorney's fees. One creditor objected to the allowance of claims submitted by two unsecured creditors. In response to the objections, appellant Croley filed an objection to the proposed disbursements and filed an amendment to the petition for attorney's fees in which appellant Croley applied for the amount originally memorialized in the fee agreement. Appellant Croley also advised all creditors by letter that, in light of the objections filed, he felt compelled to raise his fee request, and he informed the creditors that the filed objections would delay any recovery from the bankruptcy estate. Within a matter of days following appellant Croley's amendment to the fee petition and the letters to the creditors, all objections were withdrawn. Trustee Newbern disbursed the funds on that date, December 30, 1983. No judicial order authorized such disbursement.

Due to its concern regarding the propriety of the disbursement, both procedurally and otherwise, the bankruptcy court held a status conference on August 17, 1987, and a hearing on January 4, 1988.[3] The bankruptcy court issued its order on July 12, 1988.

The bankruptcy court concluded that an award of attorney's fees to appellant Croley absent an order from Judge Moseley was improper. The court refused to acknowledge Judge Moseley's handwritten comments on the proposed order submitted by Trustee Newbern as an "order." Further, the court found that the bankruptcy court has an affirmative obligation to evaluate the reasonableness of compensation paid to attorneys independent of any objection by a party in interest, and, it determined that no such evaluation had oc-

---

3. Upon the retirement of Judge Moseley on March 31, 1986, this case was assigned to Judge Hershner. Upon discovering that the case had never been closed and that no order authorizing either the disbursement of funds or the award of attorney's fees had been entered, Judge Hershner scheduled the August status conference.

curred. Despite the passage of time, the bankruptcy court determined that such an evaluation was required. After some discussion, the bankruptcy court concluded as follows:

> Trustee, with court approval, employed Mr. Croley and agreed to compensate him on a one-third contingency basis because all parties were anticipating that complex litigation would be necessary to liquidate Debtors' stock in the closely held corporation. In reality, the matter was settled in a quick and efficient manner without resorting to litigation. In light of the fact that Mr. Croley's skills as a litigator were not needed and a satisfactory settlement was quickly achieved, the Court finds that the original terms and conditions of Mr. Croley's employment were improvident. The Court therefore concludes that it must allow compensation different from the compensation to which the parties originally agreed. The Court has this power under section 328(a).

Bankruptcy Order at 11. The bankruptcy court awarded appellant Croley attorney's fees in the amount of $38,726.26, and the court ruled that Mr. Croley should be reimbursed for expenses in the amount of $324.42.[4]

### Discussion

Appellants raise several grounds in their appeal. In light of this court's disposition of the case, some of those grounds will not be addressed.

As a preliminary matter, appellants in their reply brief contend that the successor trustee, Walter W. Kelley, is judicially estopped from taking any position contrary to that taken by the predecessor trustee, Mr. Newbern. Judicial estoppel looks to the connection between a litigant and the judicial system and applies to preclude that litigant from assuming a position in a legal proceeding inconsistent with a position previously asserted. *See Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3rd Cir.1988).

Relying upon *Mosser, Successor Trustee, et al. v. Darrow, Former Trustee,* 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951), appellants contend that "[s]uccessor trustees, unlike successors of public office, are regarded as transferees or assignees of all the interests of their predecessor...." *See* Appellants' Reply Brief, p. 1. Appellants contend, therefore, that Mr. Kelley as successor trustee is estopped from arguing a position contrary to that taken by Trustee Newbern below. Appellants fail to include the remainder of the quote; the Supreme Court concluded by stating that, therefore, "removal of a trustee does not cause abatement. [citations omitted]. We hold, in accord with *Bowden v. Johnson (Adams v. Johnson),* 107 U.S. 251, 264, 27 L.Ed. 386, 390, 2 S.Ct. 246, that substitution is fully authorized and proper in these circumstances and accordingly turn to the merits." *Mosser,* 341 U.S. at 271, 71 S.Ct. at 682. Clearly, the Supreme Court was addressing a jurisdictional question, and this court will not twist the language to mean that a substituted trustee is in all situations judicially estopped from representing to a court anything contrary to the facts or doctrines asserted by a previous trustee. Such a holding would severely handicap the bankruptcy court, which by its very nature is a court founded in equity and which by design imposes a fiduciary obligation upon the trustee.

"Judicial estoppel is applied to the *calculated* assertion of divergent sworn positions. [citation omitted]. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *American National Bank of Jacksonville v. Federal Deposit Insurance Corp,* 710 F.2d 1528, 1536 (11th Cir.1983) (emphasis added). Further, the majority view is that judicial estoppel does not apply unless a party has been successful in persuading a court to accept its position." *Bates v. Cook,* 615 F.Supp. 662, 673 (M.D. Fla.1984), question certified 791 F.2d 1525 (11th Cir.1986), remanded for other reasons 840 F.2d 871 (11th Cir.1988). In the instant

---

**4.** The bankruptcy court disallowed claimed expenses of $700.00, an amount equal to the fee charged by a certified public accountant hired by Mr. Croley without court approval.

case, the bankruptcy court was not persuaded by the predecessor trustee's argument below; thus, for this reason alone, the application of judicial estoppel appears inappropriate. In addition, this case does not present a situation in which the predecessor and successor trustees collaborated to make a mockery of justice by inconsistent pleadings. The two trustees are not "calculating" together to mislead the court; rather, their positions are in opposition to the potential detriment of the predecessor trustee and Mr. Croley. To apply judicial estoppel in this situation would tend less to protect the integrity of the judicial system than to result in a manipulation of the system that the doctrine is designed to protect. This court will not apply judicial estoppel under these circumstances.

The second question before this court on appeal concerns Judge Hershner's determination that a judicial order is required before attorney's fees properly can be awarded and that Judge Moseley's handwritten comments do not constitute such an order. In explaining the process by which a bankruptcy court determines the reasonableness of attorney's fees, the Fifth Circuit Court of Appeals concluded as follows: "the bankruptcy judge must briefly explain the findings and reasons upon which the award is based...." *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1300 (5th Cir.1977), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).[5] While some aspects of *Matter of First Colonial Corp. of America* may have been superseded by subsequent changes in bankruptcy law, the bankruptcy court's duties to examine attorney's fees and to award such fees as are reasonable have not been superseded. "Although the district court has wide discretion in exercising its judgment on the appropriate fee based on its own expertise, that discretion is not without limits. A conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient." *Norman v. Housing Authority of City of Montgomery,* 836

F.2d 1292, 1304 (11th Cir.1988), citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The *court's order on attorney's fees* must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman,* 836 F.2d at 1304, citing *Adams v. Mathis,* 752 F.2d 553, 554 (11th Cir.1985) (emphasis added).

▉ The above discussion clearly establishes that the law requires both that the bankruptcy court conduct an examination into the reasonableness of attorney's fees and that the court articulate on the record principled reasons for any award made or denied. Any other procedure makes appellate review not only meaningless but also impossible. The usual method by which a court articulates its reasons and announces its conclusions is by an order. The concept of an order clearly includes not only a written opinion prepared specifically for a particular purpose but also rulings made either in chambers or from the bench. Such rulings are made generally on the record and thus provide an opportunity for meaningful appellate review. However, the concept of an order cannot, in a situation such as the one before this court, include inaction, the basis of appellant's argument in this case. This court determines, therefore, that the bankruptcy court below correctly held that attorney's fees must be awarded pursuant to some affirmative act by the bankruptcy court—an act that is "on the record" and thus will provide the opportunity for meaningful appellate review.

▉ The bankruptcy court further found as a matter of fact that neither an examination of appellant's petition for attorney's fees nor an explanation of the award therefor was evident from the record. The court was not persuaded that Judge Moseley's comments on the proposed order constituted an order. "Findings of fact shall not be set aside unless clearly erroneous

---

**5.** Fifth Circuit cases decided prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. Pritchard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*). *Matter of First Colo-* nial Corp. of America has been cited with approval in numerous Eleventh Circuit cases. *See e.g., Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1356 (11th Cir.1983).

...." Bankruptcy Rule 8013 (West 1983); *see In Re Beverly Mfg. Corp.*, 841 F.2d 365, 369 (11th Cir.1988), quoting *In Re U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir. 1981). The bankruptcy court's finding that neither an examination nor an explanation appears on the record is supported by substantial evidence and is not clearly erroneous. Thus, this court holds that the bankruptcy court acted properly in considering the award of attorney's fees to appellant Croley.[6]

In examining the reasonableness of any award of attorney's fees in this case, the bankruptcy court alluded to various activities of questionable propriety and certain circumstances of dubious coincidence. Then, the bankruptcy court concluded that "[i]n light of the fact that Mr. Croley's skills as a litigator were not needed and a satisfactory settlement was quickly achieved, the Court finds that the original terms and conditions of Mr. Croley's employment were improvident." Bankruptcy Order at 11. Appellants contend that the bankruptcy court applied an incorrect legal standard in reducing appellant Croley's attorney's fees.

Title 11, U.S.C. § 328(a)[7] reads as follows:

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions.

This section provides that an attorney's compensation, though previously established by court order prior to the rendition of professional services, may be altered when the terms of such order " 'prove to have been improvident in light of developments unanticipated' at the time the approval was given." *In Re Confections By Sandra, Inc.*, 83 B.R. 729, 731 (9th Cir. BAP 1987), quoting *In Re Benassi*, 72 B.R. 44, 47 (D.Minn.1987). The court in *In Re Confections By Sandra, Inc.* stated that while the bankruptcy court has wide discretion in altering fee agreements when the circumstances warrant, such alteration must be supported by evidence "that the contingent fee terms proved to have been improvident by reason of subsequent developments not capable of being anticipated at the time" of the order fixing an attorney's compensation. *Id.* at 732–33.

Appellants insist that the omission of the word "unanticipatable" from the Bankruptcy Order is controlling and that such omission requires a reversal of the ruling below. Unlike sorcery, the law does not require the invocation of magic words. To the extent that appellants ask this court to so hold, it declines to do so. However, the legal standard as stated in *In Re Confections By Sandra, Inc.* must be applied.

The bankruptcy court found the original terms and conditions of appellant Croley's employment "improvident." While such language might be construed to meet the

---

6. Appellant Croley asserts that the successor bankruptcy court has violated the doctrine of the law of the case by "overturning the original Bankruptcy Judge's decision on this issue." Appellant's Brief, pp. 22–25. Since this court has affirmed the bankruptcy court's determination that no such "decision" occurred, the law of the case doctrine does not apply and appellant's argument in reliance thereupon is without merit. The trustee's allegedly unauthorized disbursement of the bankruptcy estate's funds to an attorney cannot determine the "law of the

case." *See Stevenson v. Four Winds Travel, Inc.*, 462 F.2d 899, 904–05 (5th Cir.1972) (judge should respect and not overrule *decision* or *order* of other judge who previously had case on his or her calendar) (emphasis added).

7. This section of the Bankruptcy Code was amended in 1984 and substituted the phrase "not capable of being anticipated" for the unwieldy word "unanticipatable." This change is one of semantics rather than one of substance.

proper standard, this court believes such construction is not warranted. The better practice requires that this matter be remanded to the bankruptcy court for the application of the proper legal standard. A determination that the contingency fee terms contained in the fee agreement are improvident by reason of subsequent developments "unanticipatable," or not capable of being anticipated, at the time of the August 4, 1983, order fixing appellant Croley's compensation should be based upon specific findings. As stated previously, the Bankruptcy Order offers hints and allusions of such unanticipatable developments, but the court below, treading delicately, failed to make such findings specifically and failed to tie those findings to the appropriate legal standard.

In light of the foregoing discussion, this court hereby REMANDS this matter to the Bankruptcy Court with instructions to make further findings and to apply those findings to the correct legal standard.

SO ORDERED.