**UNSECURED CREDITORS COMMITTEE,**
Appellant,

v.

**WEBB & DANIEL, Appellee.**

No. 3:95–CV–182 (DF).

United States District Court,
M.D. Georgia,
Athens Division.

Jan. 31, 1997.

Laurie Webb Daniel, Atlanta, GA, Ernest V. Harris, Athens, GA, Peter S. Wynkoop, Atlanta, GA, for National Traveler, Inc., Debtor.

Nisbet S. Kendrick, III, Atlanta, GA, for Appellant.

Charles E. Campbell, John Michael Levengood, Atlanta, GA, for Appellee.

FITZPATRICK, Chief Judge.

This matter is before the Court on appeal from the United States Bankruptcy Court for the Middle District of Georgia, Athens Division. In a memorandum opinion and order filed on October 27, 1995, the Honorable Robert F. Hershner, Jr., Chief United States Bankruptcy Judge, awarded the law firm of Webb & Daniel a total of $689,004.50 for attorneys' fees and $262,021.02 for expenses incurred in connection with its role as special counsel representing a debtor in litigation that was collateral to the debtor's bankruptcy proceedings. The unsecured creditors of the debtor have appealed these awards.

**Facts**

National Traveler, Inc. (Debtor) filed for protection from creditors under Chapter 11 of the bankruptcy code on October 11, 1989, only a few days after filing a lender liability suit (Civil Action) against Trust Company of Northeast Georgia and its parent company. The parties involved in the bankruptcy proceedings recognized that the Debtor's primary asset was the lender liability claim against Trust Company. On December 6, 1989, the firm of Webb & Daniel petitioned the bankruptcy court to be appointed as special counsel for the Debtor in pursuing the Civil Action. In accordance with bankruptcy rule 2016, Webb & Daniel filed a disclosure statement that spelled out the prior fee agreement between the firm and the Debtor and stated the modifications to which it had agreed in order to continue in its representation. The Agreement includes the following: [1]

By letter dated October 10, 1989, Webb & Daniel and William L. Ulm modified the terms of the September 14, 1989 Agreement for legal services. The modified terms of the agreement provided that

---

1. William L. Ulm was the president and principal shareholder of National Traveler, Inc.

Webb & Daniel would proceed with that representation at reduced hourly rates equal to 75% of Webb & Daniel's standard hourly rates, and that in addition to the reduced hourly rates, Webb & Daniel would receive a payment in the form of a contingency fee as follows: 10% of any and all sums recovered either as a result of trial or by way of a settlement after a lawsuit has been instituted if no appeal has been involved; 15% of any and all sums recovered if any judgment is appealed, either on behalf of National Traveler, Inc., or on behalf of an adverse party, provided there is no retrial of the case; or 20% of any and all sums recovered if the matter is subject to retrial as ordered by a trial or appellate court.

The agreement also provides:

Subsequent to the filing of the Bankruptcy petition, Webb and Daniel agreed to continue representation of the derivative claims of the lawsuit on the following basis: Webb & Daniel will continue representation of the derivative claims on the reduced 75% hourly rate basis with the above described contingency fee factor. William L. Ulm will remain responsible for payments of the reduced hourly rates during the course of the lawsuit and Webb & Daniel will not apply for payment of these fees from the bankruptcy estate for this amount. If the suit is successful, Webb & Daniel will seek payment of the contingency fee from the amount recovered on behalf of the bankruptcy estate ...

Based upon the above representations, and with the support of the Committee, Webb & Daniel's request for appointment as special counsel was approved by the Bankruptcy Court. Pursuant to this agreement, Ulm paid Webb & Daniel $205,000 in reduced hourly fees.

At some point in 1990, Mr. Ulm stopped paying Webb & Daniel according to his agreement. On January 24, 1991, the Debtor's plan of reorganization was confirmed.

Webb & Daniel did not notify the Bankruptcy Court or creditors of the Debtor that Ulm had failed to pay the firm.

The Civil Action went to trial in September, 1993. As a result of the Civil Action, the Debtor recovered a total judgment in the amount of $1,141,750.00. All parties appealed this judgment, but the Debtor settled its claim for the amount of the judgment. On October 27, 1995, the Bankruptcy Court entered an order awarding Webb & Daniel a total of $689,004.50 for attorneys' fees [2] and $262,021.02 for expenses incurred in connection with the case. This order, in effect, nullified the original fee agreement pursuant to 11 U.S.C. § 328(a), and substituted a fee determined to be reasonable by the bankruptcy court under 11 U.S.C. § 330.

Under the bankruptcy court's order, Webb & Daniel would receive a total of $689,004.50 in attorneys fees, which is 60% of the settlement amount, and adding 262,021.02 in expenses means that $951,025.52 would go to attorney's fees and expenses, which amounts to 83% of the settlement amount.[3]

## Standard of Review

Findings of Fact by a bankruptcy court will not be set aside unless clearly erroneous. *Federal Rule of Bankruptcy Procedure* 8013. This means that findings of fact are subject to reversal when "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948).

The bankruptcy court's conclusions of law are subject to de novo review, which requires the district court to independently examine the law and draw its own conclusions after applying the law to the facts without regard to the decision of the bankruptcy court. *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990).

2. This includes $205,000 paid by Ulm. Thus the bankruptcy court ordered $484,004.50 in attorneys' fees to be paid from the bankruptcy estate.

3. The bankruptcy court did not allow Ulm to be reimbursed for $30,000 of the attorneys' fees that

he paid to Webb & Daniel under the reduced hourly wage agreement. Thus $921,025.52 in attorneys' fees and litigation costs came from the bankrupt estate; this totals 80% of the total recovery from Trust Company.

**Discussion**

■ The Committee contends that the Bankruptcy Court erred by failing to hold that Webb & Daniel was barred or estopped from seeking a modification of its fee agreement with the Debtor. First, Appellant asserts that the doctrine of judicial estoppel should prevent Webb & Daniel from requesting a fee that differs from the fee set in the original fee agreement.

The Eleventh Circuit has defined judicial estoppel as, "a doctrine whereby a party is estopped from asserting a proposition in the present proceeding merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath an allegation to the contrary." *Bregman v. Alderman*, 955 F.2d 660 (11th Cir.1992). The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings. *American National Bank v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983).

■ The Court holds that the doctrine of judicial estoppel should not be applied to prohibit what 11 U.S.C. § 328(a) clearly permits, the modification of a fee agreement. This section states:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingency fee basis. **Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.**

11 U.S.C. § 328(a) (emphasis added). If judicial estoppel were applicable to fee agreements in bankruptcy proceedings, it would eviscerate this statute. Any time a modification of a fee agreement is requested, the opponent of the request could claim that judicial estoppel should prevent a court from modifying the original fee agreement. Such a finding would render Section 328(a) dead letter. Judicial estoppel prevents frauds upon the courts; it should not act to limit a court's congressionally delegated powers. Therefore, the Court finds that judicial estoppel is not applicable to this case.

■ Appellant also raises the doctrine of equitable estoppel. Appellant claims that Webb & Daniel's five year "concealment" of the alleged change in its fee agreement provides a basis for this Court to invoke the doctrine of equitable estoppel. The Court finds that Appellant has failed to establish all of the necessary elements of an equitable estoppel claim.

The following elements must be established to support a claim of equitable estoppel: (1) conduct amounting to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation that such conduct be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts; and as to the party claiming the estoppel: (4) lack of knowledge of the truth as to the facts in question; (5) reliance upon the conduct of the party estopped; and (6) action based thereon of such a character as to change his position prejudicially. *Bell v. Studdard*, 220 Ga. 756, 141 S.E.2d 536 (1965).

The Court concludes that equitable estoppel is not applicable to this case. Although appellants can raise colorable arguments for a number of the elements listed above, the Appellant has not established elements five or six. Appellant, in its brief, states: "The failure to come forward with that information for five years surely meant that the economics of proceeding with the civil action could not have been considered by the Committee when it analyzed and rejected the $500,000.00 settlement offer made by Trust Company early in the litigation." However, the record evidence to which Appellant directs the Court's attention, Transcript of Proceed-

ings, May 18, 1995; pp. 128–129, establishes only the timing and amount of the settlement offer. The Court does not find record evidence that indicates that the Committee relied on the fee agreement in recommending the rejection of the settlement offer. To the contrary, the testimony of Mr. Daniel suggests that the committee encouraged the acceptance of the settlement offer. Thus the Court finds that equitable estoppel is not applicable here.

The Committee's third contention is that the Bankruptcy Court erred as a matter of law by deviating from the original compensation agreement when making a final determination of the fee award for special counsel, Webb & Daniel. In determining the proper amount of a fee award, the Court must consider both 11 U.S.C. § 328 and § 330.

In cases where the Court has pre-approved the terms of employment, upon request for compensation, "Section 330 provides the framework for review while Section 328 provides the standard of review." *In re Westbrooks,* 202 B.R. 520, 522 (Bankr. N.D.Ala.1996).[4]

■ The "standard of review" created by Section 328 requires a finding of improvidence "in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). Without such a finding, the prior fee agreement should not be disturbed. Section 330's reasonableness standard does not supplant Section 328(a) and give the judge free reign to void a previously authorized employment agreement for a percentage fee. *In re Westbrooks,* 202 B.R. 520, 522 (Bankr. N.D.Ala.1996). Where the bankruptcy court previously approved compensation terms, it cannot subsequently alter those terms unless the original terms were improvident in light of unanticipated developments. *Id; In re*

*Olympia Holding Corp.,* 176 B.R. 962 (Bankr.M.D.Fla.1994).

■ In this case the Bankruptcy Court found that: "Mr. Ulm's failure to fulfill his obligation was a development unanticipated at the time the Court approved the employment of Webb & Daniel." *Memorandum Opinion, In the Matter of National Traveler, Inc.,* No. 89–30645, 11–12 (Bankr.M.D.Ga. October 27, 1995). This statement reveals that the bankruptcy court applied a less stringent standard than the statute requires.

The statute allows revision of a fee agreement only if a development was "not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). This differs from an inquiry into whether an event was in fact anticipated. Thus a finding that Webb & Daniel did not anticipate Ulm's failure to pay legal fees does not satisfy the statute. To alter a fee agreement under Section 328, the bankruptcy court must find that it was not possible for Webb & Daniel to anticipate Ulm's failure to make payments. The Court holds that Mr. Ulm's failure to pay was an event capable of being anticipated at the time of the fee agreement. Therefore, compensation for Webb and Daniel should be determined according to the initial agreement.

The Court finds that under the original contingency fee agreement, Webb & Daniel is entitled to 15% of the recovery from the district court litigation. Therefore, $171,-262.50 in attorneys' fees shall be paid to Webb & Daniel from the bankrupt estate.[5]

■ Finally, Appellant argues that the bankruptcy court erred by ordering that special counsel be reimbursed for expenses incurred in the employment of professionals who were not pre-approved by the court according to 11 U.S.C. § 327 et seq. Appellant cites as authority a 1988 opinion of

---

4. Section 330(a)(1) provides:

    After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and

by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses.

5. This award from the bankrupt estate, when combined with $205,000 paid to Webb & Daniel by Ulm, brings Webb & Daniel's compensation for their services in the Trust Company litigation to a total of $376,262.50.

Judge Hershner, *Matter of Ross*, 88 B.R. 471 (Bankr.M.D.Ga.1988).[6] The Court finds that Judge Hershner's memorandum opinion in the present case is more persuasive. In it he states: "Webb & Daniel was not required to obtain court approval to employ experts in collateral litigation. It would have been improper for this Court to have been intimately involved in supervising Webb & Daniel's litigation in the district court." This conclusion is consistent with the Court's reading of 11 U.S.C. §§ 327–330. *See In re That's Entertainment Marketing Group, Inc.*, 168 B.R. 226 (N.D.Cal.1994); *In re Argus Group 1700, Inc.*, 199 B.R. 525, 534 (Bankr.E.D.Pa.1996).

The court, of course, is aware that appellees have devoted, according to their time records, 5,786 hours in services of lawyers, paralegals and clerks to the Trust Company litigation. The Court recognizes that the litigation was complex and involved a trial before a special master and a jury trial. However, the Court is struck by the enormous amount of time spent on this case, and the fact that the bankruptcy court allocated 80% of the settlement amount to attorneys' fees and costs under a reasonable fee analysis that is based on hourly pay. The result is that only $220,724.48 of a sum in excess of one million dollars is available for payment of claims. Such an outcome causes the Court to conclude that something is amiss in our system of awarding attorneys' fees.

The practice of billing by the hour has become firmly established in our legal system. It was developed, no doubt, so that clients could see where their money went. Sometimes the hourly rate system works well, but often it does not. It seems obvious that it did not work well here. Logic leads one to conclude that far too many hours were spent than necessary when the net result is only 20% for the client.[7]

Accordingly, the October 27, 1995, Order of the bankruptcy court is vacated in part and affirmed in part. The bankruptcy court's award of attorney's fees is **VACAT-**

ED and it is hereby **ORDERED** that Webb & Daniel be paid $171,262.50 from the bankrupt estate. The bankruptcy court's award of $262,021.02 to Webb & Daniel for expenses is hereby **AFFIRMED.**

SO ORDERED.

---

6. The issue of court approval as a prerequisite for the employment of experts to assist in collateral litigation was not addressed by Judge Owens in the appeal of this case. *Matter of Ross*, 94 B.R. 210 (M.D.Ga.1988).

7. This observation is only offered as an aside because this order was based on issues other than the reasonableness of the lodestar method of computing legal fees.