**In re CASCADE OIL COMPANY, INC., Debtor.**

**Nos. 90–1248–C and 90–1250–C.**

United States District Court, · D. Kansas.

April 2, 1991.

Gerald D. Lasswell, Stinson, Lasswell & Wilson, Wichita, Kan., for debtor, Cascade.

Michael L. Jones, Hershberger, Patterson, Jones & Roth, Wichita, Kan., for Creditors' Committee and Trustee of the Cascade Liquidating Trust.

## MEMORANDUM AND ORDER

CROW, District Judge.

These are bankruptcy appeals brought by two law firms from an order denying their motions to reconsider an earlier order that had disallowed a particular amount or percentage of their requested fees. Because the issues are similar in both appeals, the court consolidates them for purposes of entering this order.

This Chapter 11 bankruptcy was filed by the debtor on May 7, 1982. A liquidating plan was confirmed on December 18, 1986. Debtor's counsel, the law firm of Stinson, Lasswell & Wilson (SL & W), filed an application for fees on December 30, 1986, for professional services rendered from April 29, 1982, through November 30, 1986. The application included a seventeen-page memorandum and narrative, three charts summarizing relevant matters, and 106 pages of time itemizations. A supplemental appli-

cation was filed February 17, 1987, requesting attorney's fees for services performed from December 1, 1986, through February 5, 1987. The total of these applications was $209,828.25 plus a request of $2,295.00 for preparing the fee application. The trustee filed objections to the requested hourly rate for the period before 1984 and to some of the time as possible duplicative work. The debtor's counsel agreed to reduce its application in accordance with those objections.

An official creditors' committee was appointed in this case and was represented by a law firm in Dallas, Texas, and the law firm of Hershberger, Patterson, Jones & Roth (HPJ & R) served as local counsel for the committee. On January 23, 1987, counsel for the creditor's committee filed their application for fees and expenses. A supplemental application was filed on February 17, 1987. Adding the applications together, HPJ & R asked for attorney's fees in the amount of $35,228.50 and expenses in the amount $3,385.72 for a total request of $38,614.22.

A hearing was held on February 18, 1987, and the bankruptcy court filed its memorandum of decision on May 12, 1987. As to the SL & W application, the bankruptcy court found:

> [T]here is a great deal lacking in description and there appears to be much overlap in work performed. The fee request will be reduced twenty-five percent (25%) to $157,371.19. A retainer of $25,000.00 has been previously paid, leaving $132,371.19 payable. Added to this amount are expenses in the amount of $17.40. Any interim fees already paid should be taken into account. The Court notes that the debtor's counsel have requested the

sum of $2,295.00 in connection with the application for reimbursement. While counsel is entitled to collect some reasonable fee for the application, it should not have taken an attorney the better part of one week to prepare a fee application. Allowed with the above fee is the sum of $850.00 for reimbursement of debtor's counsel's time in preparing the fee application.

(Bankr.Dk. 1395 at p. 21). Judgment was entered in the sum of $133,238.59, which after deducting the interim fee of $15,700.00, equals $117,538.59.[1] The net effect was to reduce the request by $51,363.41 or 24.5%.[2]

As to the HPJ & R application, the bankruptcy court found:

> The fee application is very skimpily documented in that very little detail is given. The fee application will be reduced to $27,029.95 for inadequate documentation. Credit must be given for any prior fees paid, though the Court recognizes that the amount requested, $38,614.22, reflects a deduction for interim fees already paid.

(Bankr.Dk. 1395 at p. 21). Judgment was entered for $27,029.95 less any interim fees. HPJ & R's application of $38,614.22 already accounted for the interim fees. The net effect of this order was to reduce the request by $15,105.98 or 39%.[3]

Both law firms moved for reconsideration of this order reducing their fee requests. The court heard arguments on February 8, 1990, and denied the motions from the bench and by an order filed May 2, 1990. The court explained in the order that the fees were denied not because they were unreasonable but because the determination of reasonableness could not be

---

1. In the order denying the motion to reconsider, the bankruptcy court refers to a final award of $116,671.19. (Bankr.Dk. 1809 at p. 5). This number plus $850.00 for the fee application plus $17.40 for expenses equals $117,538.59.

2. These figures are based on the following calculations. Adding the fee application of $209,828.25 to the fee request for preparing the application of $2,295.00, equals $212,123.25. Subtracting the retainer and interim fees of $40,700 and what was conceded on the trustee's objec-

tions, $2,521.25, gives a sum of $168,902.00. Deducting what the bankruptcy court actually awarded, $117,538.59, the result is $51,363.41 or 24.5% of $209,602.00 ($212,123.25 minus $2,521.25 for the conceded objections).

3. These figures are derived from the following calculations. The application sought $38,614.22. Deducting the $27,029.65 awarded by the bankruptcy court and the interim award of $3,521.41 gives a total of $15,105.98 which is 39% of $38,614.22.

made from the documentation supplied in the fee request. The court further said:

Here, the Court concluded that the documentation was insufficient to support an award of compensation for much of the time spent. Many of the entries in the fee application were extremely brief and did not contain the detail generally seen in fee applications. Rather than deny all compensation for the time not properly documented, the Court chose to reduce the allowed time.

(Bankr.Dk. 1809 at p. 6). SL & W and HPJ & R appeal the order denying their motions to reconsider.

The district court sits as an appellate court on matters appealed from the bankruptcy court. Bankr.R. 8013. The parties argue the court should employ a *de novo* standard of review as the issues on appeal concern the application of legal standards.

■■■ An attorney's fees award will be reversed on appeal only if there was an abuse of discretion. *Smith v. Freeman,* 921 F.2d 1120, 1122 (10th Cir.1990); *Reazin v. Blue Cross and Blue Shield of Kansas,* 899 F.2d 951, 980 (10th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). Discretion is abused when the judge does not apply the proper legal standards, does not follow the proper procedures, or bases an award on findings of fact that are clearly erroneous. *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883, 890 (11th Cir.1990); *Matter of Evangeline Refining Co.,* 890 F.2d 1312, 1325 (5th Cir.1989); *Matter of Pontiac Hotel Associates,* 92 B.R. 715, 716 (E.D.Mich. 1988). The reasonableness of attorney's fees is generally a question of fact. *Matter of Lee,* 884 F.2d 897, 899 (5th Cir.1989). Even though some evidence may support it, a finding of fact may still be clearly erroneous if the appellate court after reviewing the entire evidence has the definite and firm conviction that a mistake has been committed. *In re Hart,* 923 F.2d 1410, 1411 (10th Cir.1991). The abuse of discretion standard as so defined provides an adequate framework for this appeal.

The parties first argue the bankruptcy court imposed a requirement for detailed fee applications that was inappropriate, inapplicable, excessive or erroneous.

■■■ Applications for attorney's fees are governed by 11 U.S.C. § 330 (1986), which provides in pertinent part:

After notice to any parties in interest and to the United States trustee and a hearing, ..., the court may award to a ... professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... professional person, or attorney, as the case may be, ... based on the nature, the extent, and value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

This provision has been effectively broken down into three stages of inquiry: (1) is the billed service compensable; (2) was the service actual and necessary; and (3) is the billed amount reasonable considering the nature, extent and value of such services. *In re S.T.N. Enterprises, Inc.,* 70 B.R. 823, 832 (Bankr.D.Vt.1987). Having arrived at a total number of hours reasonably worked on the case, the court multiplies it by the reasonable hourly rate resulting in the so-called "lodestar" amount. *In re Spillane,* 884 F.2d 642, 647 (1st Cir.1989); *Matter of Cena's Fine Furniture, Inc.,* 109 B.R. 575, 581 (E.D.N.Y.1990). The lodestar then may be adjusted upward or downward on the weight of various factors. *Smith v. Freeman,* 921 F.2d at 1122–23.

■■■ Section 330 takes a new direction from the policy and practice under the former Bankruptcy Act. Congress intended § 330 to " 'overrule ... cases that require fees to be determined on notions of conservation of the estates and economy of administration.' " *In re Metro Transp. Co.,* 107 B.R. 50, 52 (E.D.Pa.1989) (quoting H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 330 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6286). This was done to

ensure that bankruptcy counsel would receive fees comparable with counsel practicing in other areas and that the bankruptcy field would continue to have competent counsel. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 329–30 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Accordingly, the present goal is " 'to balance a spirit of economy on the one hand with fees sufficiently close to market rates to attract qualified counsel on the other.' " *In re Spillane*, 884 F.2d at 647 (quoting *Boston & Maine v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 898 (1st Cir.1985).

■ The award of fees is still committed to the sound discretion of the bankruptcy court, and while economy of the estate is no longer the standard, the courts only are to award fees that are found to be actual and necessary. The balance between the notions of economy and reasonable compensation is a sensitive one. As shown in some of the reported decisions, courts have not always maintained this balance. Not surprisingly then, vestiges from the days of practice under the Bankruptcy Act occasionally emerge in the exercise of such judicial discretion.

■ The process of determining fees begins with the application. The burden rests with the applicant to show the reasonableness of the requested fees. *Smith v. Freeman*, 921 F.2d at 1122. What this burden of proof entails is a matter of both case law and court rule. Looking first at the case law, the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), held that "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." The Tenth Circuit in *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir.1983), also addressed the burden of presenting evidence on fee applications:

> In the future, district judges in this Circuit will inform lawyers that if they intend to seek attorney's fees under § 1988 they must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on.

See *Bee v. Greaves*, 910 F.2d 686, 689 n. 5 (10th Cir.1990). In a footnote to this passage, the Tenth Circuit recognized that some lawyers may not have kept contemporaneous records and that reconstructing those hours generally results in understatement and overstatement of hours requiring the special scrutiny of the court. 713 F.2d at 553 n. 2. The Tenth Circuit, however, ruled out the need for arbitrary reduction of the hours appearing on reconstructed records. *Id.*

■ This court finds no merit to the argument that *Ramos* created a new standard for documentation which could not be fairly applied in this case for any billings before 1983. Assuming, without deciding, that *Ramos* requires more documentation than was previously required from fee applicants in bankruptcy cases, the Tenth Circuit obviously alleviated any prejudice from this new standard by allowing reconstructed records. In the case *sub judice*, the bankruptcy court did not foreclose any attempt at reconstruction, but simply found those efforts inadequate.

As for court rules, Bankruptcy Rule 2016, promulgated in 1983, requires in relevant part:

> (a) *Application for compensation or reimbursement.* A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

The 1987 Advisory Committee's Note suggest that they decided against amending the Rule to delineate the amount of detail required in an application since this was necessarily "a function of the nature of the services rendered and the complexity of the case." The courts, however, have fleshed

out the requirement of a "detailed statement."

 "[A] proper fee application must list each activity, its date, the attorney who performed the work, a description of the work performed or subject matter of the work, and the time spent on the work." *In re Yankton College*, 101 B.R. 151, 159 (Bankr.S.D.1989) (citations omitted); see *In re Beverly Mfg. Corp.*, 841 F.2d 365, 370 (11th Cir.1988); *Cohen & Thiros v. Keen Enterprises*, 44 B.R. 570, 573 (N.D.Ind. 1984). Merely listing a telephone call, conference, correspondence or research is not enough. The records must disclose to some extent the substance of the activity.[4] Besides being detailed, the application should be concise. *Matter of Cena's Fine Furniture, Inc.*, 109 B.R. at 583 n. 15 ("The law 'does not require a fee application the size of a boring victorian novel.'" *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bankr.E.D.Pa.1981)); *In re Paul*, 100 B.R. 38, 42 (Bankr.D.Colo.1989) ("a short concise statement of the task").

 The requirement of detail and specificity serves to provide the information needed for the court to decide whether a particular fee or expense is both "actual and necessary." *Cohen & Thiros*, 44 B.R. at 572; *In re Yankton College*, 101 B.R. at 158. This requirement is not an end in itself and should be enforced in a manner that serves its purpose or function. Consequently, fee applications falling short of the "'ideal level of completeness'" may still be sufficient. *Matter of Evangeline Refining Co.*, 890 F.2d at 1326 (quoting *Matter of Lawler*, 807 F.2d 1207, 1212 (5th Cir.1987)). "[A]n application must be sufficiently detailed and accurate that, in conjunction with any proceeding in connection

therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable." *Matter of Evangeline Refining Co.*, 890 F.2d at 1326 (citing *Matter of Lawler*, 807 F.2d at 1212). For the same reason, compensation may be allowed for those intermittent entries that lack sufficient detail when they were supported by a reading of the entire application. *In re Prime Foods of St. Croix, Inc.*, 80 B.R. 758, 762–63 (D.V.I.1987). Nonetheless, a court is well within its discretion to deny those fees and expenses that are so inadequately documented as to prevent a determination of their reasonableness.

 In the instant case, the bankruptcy court made a general finding that it was unable to determine if the requested hours were actual and necessary in many instances because the appellants failed to provide a detailed statement with proper documentation. The bankruptcy court in its order of May 12, 1987, pointed out several examples of deficient entries in the appellants' billing records concerning conferences and research. In those examples, the applicants have recorded "telephone conference" or "legal research" entries without any indication of the subject matter. In those examples, the substance of the conferences or research is not readily apparent from looking at the entire billing record. "The reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney ... who has not done so himself." *Matter of Evangeline Refining Co.*, 890 F.2d at 1326.

Appellants argue this rule poses the dilemma of how much detail is enough and offer a hypothetical continuum of possible entries.[5] The argued dilemma is not cause

---

4. Good examples of detailed entries are found in *Matter of Cena's Fine Furniture, Inc.*, 109 B.R. at 582; *In re Coastal Equities, Inc.*, 39 B.R. 304, 311 (Bankr.S.D.Cal.1984). This court disagrees that every entry should include an explanation of necessity and the outcome of the activity. Nor is it reasonable to expect entries for research to delineate each issue researched and the purpose for which the research was used. Contra *In re S.T.N. Enterprises*, 70 B.R. 823, 833 (Bankr.D.Vt.1987). In most instances, these additional details would offer matters already ob-

vious from the record. Consequently, requiring such detail would be an example of diminishing returns since the information provided would be minimal in light of the burden and cost to counsel and the estate.

5. It is curious why appellants offer a continuum of detailed entries that does not even extend to the vague, two-word entries, "telephone conference" or "legal research," often found on their own billing records and cited as examples by the bankruptcy court.

for abandoning the requirement of detailed statements. Rule 2016 and the cases that had interpreted it by 1986 gave the appellants fair warning of what would be expected on their applications. As the Advisory Committee noted in 1987, the amount of detail required under Rule 2016 depends upon the nature of the service provided and the complexity of the case. At least in those cited examples, the appellants did not provide the detail required under the circumstances of this case.

 Appellants argue the bankruptcy court admitted it had no cause to doubt counsels' word that the services were performed. One could even surmise from the blanket word of counsel that the recorded time was actual and necessary, but the courts are not free to blithely ignore the Bankruptcy Rules and its requirement for a "detailed statement." This practice does not mean the courts are disbelieving or discrediting the word of counsel. Rather, an award of fees is based upon a judicial finding of reasonableness. It is more than an empty formality of signing an order submitted by counsel. See *In re Metro Transp. Co.*, 107 B.R. 50, 54 (E.D.Pa.1989). As apparent from the cited examples, the bankruptcy court applied a standard well-established by court rule and case law.[6]

Appellants repeatedly refer to the fact there were no pending objections to their fee applications when the bankruptcy court reduced their requests. The suggestion is that this lack of objections somehow limits the role of the bankruptcy court in reviewing the fee applications.

 In the absence of objections to the fee applications, the court still has the independent judicial duty to determine whether compensation is reasonable. *York Intern. Building, Inc. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir.1975); *In re Meade Land & Development Co.*, 527 F.2d 280, 284 (3rd Cir.1975) ("It is the [bankruptcy] court's independent obligation to give credit only where there are ... supporting documents,

even cases where no interested parties raise objections to the claims."); *In re Oberreich*, 109 B.R. 936, 937 (Bankr.E.D. Wis.1990). By restricting compensation to actual and necessary service, § 330 imposes a mandatory duty on bankruptcy courts to exercise billing judgment in the award of fees. One court has described that duty as follows: "When attorneys fail to exercise this sort of billing judgment in advance, the Bankruptcy Court is within its discretion to act as 'client' 'objecting' to excessive fees which it deems overstep the 'actual and necessary' standard imposed by Section 330(a)(1)." *In re Metro Transp. Co.*, 107 B.R. at 53 (citation omitted), see *In re S.T.N. Enterprises, Inc.*, 70 B.R. at 831 (Court has a "supervisory obligation" to protect the "public interest" in the award of fees from the estate). The bankruptcy court was well within its authority to scrutinize *sua sponte* the fee applications.

 Appellants argue they were denied any meaningful opportunity to supplement their fee application with additional documentation. This argument is subsumed by the broader issue of what are the bankruptcy court's alternatives in handling inadequate fee applications.

This problem has been dealt with in a number of different ways. In the case of *In re Coastal Equities, Inc.*, 39 B.R. 304, 311 (Bankr.S.D.Cal.1984), the court reduced the fee request by 5% which represented the amount of the insufficient entries. Another court, in a similar fashion, totalled the exact number of hours inadequately documented and reduced the fee request accordingly. *Matter of Boston and Maine Corp.*, 46 B.R. 990, 995 (D.Mass.), *vacated*, 776 F.2d 2 (1st Cir.1985). Where the fee application was deficient in several critical respects, including no evidence on a reasonable hourly rate, activities improperly aggregated and no detailed information, the court said it could deny the fees altogether but chose to abandon the application entirely and assess its own value on the

---

6. Since interim allowances are always subject to reconsideration during the course of the case, the bankruptcy court did not err in later applying the requirements of Rule 2016 for those

hours already allowed in the interim. See generally *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982).

services rendered. *In re Lock Shoppe, Inc.*, 67 B.R. 74, 75 (Bankr.E.D.Pa.1986). One court held that it was not error to deny without prejudice all fees until the application was supplemented with evidence on reasonable hourly rates. *In re Gianulias*, 111 B.R. 867, 869 (E.D.Cal. 1989). Yet another approach is seen in the case of *In re Paul* where the court ordered the applicant to supply more detailed information or the application would be denied without further notice or hearing. 100 B.R. at 42. From these cases and others, two general practices are evident. Inadequately documented hours are reduced, and applicants are given a chance to supplement or correct deficiencies in their fee applications.

 In the present case, the bankruptcy court through its original order adequately notified the appellants that their applications did not include the necessary detail. The applicants were afforded an opportunity to supplement their material in their motions to reconsider. See *In re Beverly Mfg. Corp.*, 841 F.2d at 371.[7] HPJ & R did not submit any new material other than an affidavit stating generally that all records were accurate and not padded and all expenses were necessary. This affidavit does not cure any of the shortcomings in HPJ & R's application. SL & W likewise submitted an affidavit which addressed the examples of telephone conference entries and legal research entries cited by the bankruptcy court. This affidavit suffi-

ciently supplements several of the telephone conference entries but fails to provide the necessary information as to the legal research entries.

 Appellants' final attack is on the lack of any findings by the bankruptcy court to justify the specific reductions to their fee applications. SL & W points out that the bankruptcy court's cited examples of deficient entries constituted approximately 2% of its total hours, yet the court reduced its award by 25%. The reviewing court finds merit in this argument.

The discretion vested with the court determining the fee award is a function of that court's "superior understanding of the litigation" and the hope of discouraging appeals from primarily factual issues. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. "It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award." *Id.* See *Smith v. Freeman*, 921 F.2d at 1122. A conclusory statement on whether a fee is reasonable or unreasonable is generally not sufficient. See *Matter of Ross*, 94 B.R. 210, 214 (M.D.Ga.1988). Meaningful review is frustrated, if not impossible, when the lower court does not explain why it awarded compensation at that level. *Matter of Evangeline Refining Co.*, 890 F.2d at 1327–28. " 'The *court's order on attorney's fees* must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its

---

7. The Eleventh Circuit found that the applicant had sufficient opportunity to present further evidence at the hearing on its motion for new trial on the application. It also quoted the following instructive language from *In re U.S. Golf Corp.*, 639 F.2d 1197, 1207–08 (5th Cir.1981):

"We think the better practice would have been for the judge to confront the attorney at least with his general objections to the attorney's claimed hours, and perhaps with particular items the judge thought unnecessary or non-legal. In this way the judge could have focused the evidentiary hearing on the specific deficiencies in the attorney's application, and might have facilitated a more informed determination of the attorney's fee. However, the failure to follow this practice is not an adequate ground for reversal. We have long recognized the importance of the bank-

ruptcy judge's closeness to issues raised in application for attorney's fees; the bankruptcy judge has not only presided over the evidentiary hearing, but has also had the opportunity to observe the performance of the attorney throughout his employment before the bankruptcy court. Consequently, a bankruptcy judge has wide discretion in the awarding of attorney's fees. Since the burden was on Neville to demonstrate that the hours he spent on this case were reasonable uses of attorney time, and since Neville was afforded an evidentiary hearing at which to establish this fact, we conclude that the judge committed no abuse of discretion by failing to inform Neville in advance of or during the evidentiary hearing of the specific grounds on which he ultimately relied for the disallowance of hours."
841 F.2d at 371.

calculation.'" *Matter of Ross*, 94 B.R. at 214 (quoting *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir.1988)).

 In none of its orders or rulings from the bench, did the bankruptcy court state that the reductions represent the amount of inadequate entries. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Based upon the orders and transcripts of record, this court is unable first to determine if the bankruptcy court only reduced those hours that were not documented and further is unable to review then what factual and legal bases exist in support of that reduction. The facts presented in this case are insufficient for the bankruptcy court to penalize the applicants beyond a corresponding reduction for lack of detail. In reviewing the billing records, this court finds that not all of the telephone conference entries and legal research entries are deficient. It would be improper for this court to speculate on the reasons or grounds for why the bankruptcy court deducted the particular amount of fees.[8] Without an explanation behind these deductions, this court cannot meaningfully review the bankruptcy court's conclusions.

IT IS THEREFORE ORDERED that the bankruptcy court's order of May 2, 1990 (Bankr.Dk.1809) is affirmed in part and remanded in part.

---

**8.** The bankruptcy court need not delineate each disallowance and reason for it. *In re Metro Transp. Co.*, 107 B.R. at 54. It is sufficient in this case to supplement the prior orders with a finding that explains how the particular deductions were decided upon and calculated.