### ORDER DENYING IRS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEBTORS' CROSS MOTION

Based upon the findings of fact and conclusions of law filed contemporaneous herewith, it is

ORDERED that the United States' Motion for Summary Judgment is denied; it is further

ORDERED that the Debtors' Cross Motion for Summary Judgment is granted; it is further

ORDERED that the Debtors' objection to the claim of the Internal Revenue Service is sustained and the claim is disallowed.

### In re RECONVERSION TECHNOLOGIES, INC., Debtor.

### In re RECONVERSION TECHNOLOGIES, Debtor.

**Bankruptcy No. 95–00821–M.**

United States Bankruptcy Court, N.D. Oklahoma.

Dec. 10, 1997.

Terry Thomas, Crowe & Dunlevy, Tulsa, OK, for Crowe.

Katherine Vance, Assistant U.S. Trustee, Tulsa, OK.

Gary M. McDonald, Doerner Saunders Daniel & Anderson, Tulsa, OK, for Clark & Holt.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to Crowe & Dunlevy's ("Crowe") Second Application of Special Counsel to Examiner for Compensation for Services Rendered and Reimbursement of Expenses Incurred (the "Second Application"). Objections to the Second Application were filed by the Office of the United States Trustee, and Richard T. Clark, Jr. ("Clark") and Joel C. Holt ("Holt"), creditors and parties–in–interest. A hearing on the matter was held on October 15, 1997 (the "hearing"). Appearing at the hearing were Neal Tomlins ("Tomlins"), Examiner for the Estate, Terry Thomas on behalf of Crowe, Paul Thomas, attorney for the United States Trustee, and Gary McDonald, attorney for Clark and Holt. Evidence in the form of testimony and exhibits was presented to the Court. The matter was taken under advisement. This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this contested matter is proper pursuant to 28 U.S.C. § 157(a) and 11 U.S.C. § 330, and it is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

### Findings of Fact

These bankruptcy cases were commenced by Debtors' filing of voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code on March 23, 1995. On August 30, 1995, Tomlins was appointed as Examiner in both cases. On March 26, 1996, Crowe was appointed Special Counsel for Tomlins. On November 13, 1997, a plan of reorganization proposed by Clark and Holt was confirmed in the Reconversion Technologies, Inc. case.

Crowe was appointed special counsel for the purpose of representing the Debtors in an adversary proceeding captioned *Reconversion Technologies, Inc. and Reconversion Technologies of Texas, Inc. v. Klenda, Gordon & Getchell, P.C. and G. David Gordon, Jr.*, and docketed as Adversary Case No. 96–0330–W (the "Negligence Action"). On February 7, 1997, Crowe filed its First Application of Crowe & Dunlevy, Special Counsel to Examiner for Compensation for Services Rendered & Reimbursement of Expenses Incurred (the "First Application"), in which Crowe sought and was awarded the sum of $5,363.50 in fees and expenses for the time period from March 28, 1996, through December 31, 1996. On August 6, 1997, Crowe filed the Second Application. In the Second Application, Crowe seeks payment for services and expenses expended during the time period from January 1, 1997 through June 30, 1997, in the amount of $39,249.00 in fees and $81.45 in expenses.

The Court heard testimony as to the qualifications of Messrs. Thomas and Levit. Mr. Thomas graduated with a Juris Doctor degree from the University of Texas in 1980. He has been involved in a variety of litigation including commercial, business and bankruptcy matters. Mr. Thomas has been involved in at least 50 trials, and has acted as

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (West 1997).

first chair in the majority of the same. Mr. Levit is a licensed attorney and associate with Crowe and a former judicial clerk. No other specific evidence or testimony was offered regarding Mr. Levit's qualifications.

Limited evidence was offered as to the paralegals' qualifications. All of the paralegals are certified legal assistants. Ms. B. Sue Williams ("Ms.Williams") has worked for Crowe for two years. She came to Crowe from a Phoenix law firm where she worked as a paralegal for 11 years. While at the Phoenix firm, her time was billed at an hourly rate of $85.00. Ms. Williams has extensive experience concerning document organization and categorization. She was involved in the organization and categorization of documents produced in the Negligence Action and the creation of a computer data base for that purpose. No evidence was presented regarding the experience or qualifications of any of the other paralegals. None of the four paralegals had supervisory duties over any of the others; all performed substantially the same tasks.

While the paralegals expended significant time on the Negligence Action, it did not consume them. During the period from January 1997 to March 1997 (12 weeks), no paralegal spent more than 96 hours on the matter, an average of approximately eight hours per week.[2] During the months of May and June, 1997 the paralegals devoted an average of 6.6 hours per week to the Negligence Action.[3] The tasks performed by the paralegals involved critical analysis and use of their paralegal skills, and were not administrative or secretarial in nature.

During the hearing, Mr. Thomas pointed out that certain time entries in the Second Application needed correction or elimination.

**2.** Paralegal Thomison spent 64.3 hours on the matter in the time period from January 6, 1997 to March 31, 1997; paralegal Hoover spent 30.7 hours on the matter in the time period from January 6, 1997 to March 31, 1997; paralegal Ranck spent 22.5 hours on the matter in the time period from January 6, 1997 to March 31, 1997; paralegal Williams spent 95.6 hours on the matter in the time period from January 6, 1997 to March 31, 1997.

**3.** From April 1, 1997 to April 29, 1997 paralegal Thomison billed 27.1 hours, paralegal Ranck billed 27.5 hours and paralegal Williamson billed

Specifically, Mr. Levit's services on February 5, 1997, for 0.6 hours of completing the expense report should be eliminated and the time spent by Mr. Levit on March 6, 1997, preparing a draft order approving the first fee application should be reduced from 1.0 hours to 0.10 hours. As a result of these modifications, the fees requested total $39,098.00.

In the Second Application, Crowe requests approval and payment for services rendered at the following hourly rates:

| | |
|---|---|
| Mr. Thomas: | $175.00 |
| Mr. Levit: | $110.00 |
| Ms. Williams: | $ 85.00 |
| Ms. Rhonda Thomison: | $ 65.00 |
| Ms. Carol Ranck: | $ 70.00 |
| Ms. Ronda Hoover: | $ 80.00.[4] |

The Second Application reflects an increase in the hourly rates sought for Messrs. Thomas and Levit. In the First Application, Crowe sought compensation for Mr. Thomas' services at an hourly rate of $165, and for Mr. Levit's services at $95.00 per hour. No paralegal fees were sought in the First Application.

To the extent the "Conclusions of Law" set forth any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

■■■ The provisions of the Bankruptcy Code governing payment of professionals retained by a bankruptcy estate provide as follows:

§ 330. Compensation of officers

(a)(1) After notice to the parties in interest ... the court may award to a trustee, an

50.4 hours; from May 2, 1997 to May 30, 1997, paralegal Williams billed 45.9 hours and paralegal Thomison billed 47.3 hours; from June 2, 1997 to June 29, 1997 paralegal Thomison billed 10.7 hours and paralegal Williams billed 2.3 hours.

**4.** Ms. Williams, Ms. Thomison, Ms. Ranck and Ms. Hoover are all paralegals. Ms. Williams recorded a total of 194.2 hours; Ms. Thomison, 149.4 hours; Ms. Ranck, 45.7 hours; and Ms. Hoover, 1.5 hours.

examiner, a professional person employed under section 327 or 1103—

 (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

 (B) reimbursement for actual, necessary expenses.

(a)(2) The court may, on its own motion or the motion of the United States Trustee, the United States Trustee for the District or region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(a)(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services:

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable, based upon the customary compensation charged by comparable skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(1–3) (West 1997). A bankruptcy court under 11 U .S.C. § 330(a) may grant reasonable attorneys' fees, paralegal fees and other professional and paraprofessional fees for "actual" and "necessary services." *In re Health Science Products, Inc.*, 191 B.R. 895, 911 (Bankr.N.D.Ala.1995). Fee awards "must be fair, neither so high that the res the proceeding is designed to protect is consumed, nor so parsimonious as to discourage the active participation of competent counsel." *In re Lafayette Radio Electronics Corp.*, 16 B.R. 360, 362 (Bankr. E.D.N.Y.1982) (citing *In re Farrington Mfg. Co.*, 540 F.2d 653 (4th Cir.1976)).

 The professional seeking to be paid fees and expenses from a bankruptcy estate must file an application with the court. The substantive requirements for such an application are set forth in Bankruptcy Rule 2016(a).[5] The burden rests with the applicant "to prove and establish the reasonableness of each dollar, each hour, above zero." *In re Burke*, 147 B.R. 787, 798 (Bankr. N.D.Okla.1992) (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir.1986)). Similarly, it is the applicant's burden to present its fee application in such a form as to make the tasks performed and the time spent readily apparent. It is not the duty of the court to speculate or theorize as to the work performed. *Cf. In re Seneca Oil Co.*, 65 B.R. 902, 908 (Bankr.W.D.Okla. 1986).

 In the eyes of this Court, determination of professional fees allowable under

---

**5.** Bankruptcy Rule 2016(a) provides as follows:

 (a) **Application for Compensation of Reimbursement.** An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

Bankruptcy Rule 2016(a).

§ 330(a) entails a three step process: "(1) is the billed service compensable; (2) was the service actual and necessary; and (3) is the billed amount reasonable considering the nature, extent and value of such services." *In re Cascade Oil Co.*, 126 B.R. 99, 103 (D.Kan. 1991) (citing *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 832 (Bankr.D.Vt.1987)).

## A. Benefit to the Estate

■ The "threshold issue" for this Court to consider as it rules on the Second Application is whether the services of Crowe benefitted the bankruptcy estate. *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir.1993). Unless the Court determines that a benefit was conferred upon the estate, the inquiry goes no further, and the fees are not compensable. In the present case, all who appeared before the Court at the evidentiary hearing attested to the fact that the services rendered by Crowe were of significant benefit to the bankruptcy estate. Tomlins, the court appointed examiner, went so far as to state that the efforts of Crowe were at least in part responsible for the agreements of the parties that led to confirmation of Clark and Holt's Chapter 11 plan. In addition, the evidence was undisputed that the efforts of Crowe will continue to be of value to the reorganized debtor.[6] The Court expressly finds that the efforts of Crowe as reflected in the Second Application conferred a benefit upon the bankruptcy estate, and, as such, are compensable.

## B. Reasonableness of Fees

### 1. Attorneys' Fees

■ Having determined that the services performed by Crowe are compensable, the Court must next consider whether the attorney fees requested by Special Counsel in this case are reasonable. As a general matter the "lodestar" method, namely number of hours expended times a reasonable hourly rate, is used to determine attorney fees. *In re Cent. Metal Fabrication, Inc.*, 207 B.R. 742, 748 (Bankr.N.D.Fla.1997). The "total number of hours reasonably worked on the case" is "multiplie[d] ... by the reasonable hourly rate built in the so-called 'lodestar' amount." *In re Cascade Oil Co., supra,* 126 B.R. 99, 103 (D.Kan.1991) (citations omitted). The result of the calculation may be adjusted by the bankruptcy court using various factors. *Id.* The leading case regarding adjustment of the lodestar figure set out twelve factors to determine a reasonable attorney fee. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) (*overruled on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)) (hereinafter "*Johnson* "). These factors are:

1. The time and labor required.

2. The novelty and difficulty of the question.

3. The skill requisite to perform the legal service.

4. The preclusion of other employment by the attorney due to the acceptance of the case.

5. The customary fee.

6. Whether the fee is fixed or contingent.

7. Time limitations imposed by the client or the circumstances.

8. The amount involved and the results obtained.

9. The experience, reputation, and ability of the attorneys.

10. The "undesirability" of the case.

11. The nature and length of the professional relationship with the client.

12. Awards in similar cases.

*Id.* at 717–719. The Tenth Circuit has adopted the *Johnson* factors in deciding the reasonableness of attorney fees. *In the Matter of Permian Anchor Services, Inc.*, 649 F.2d 763, 768 (10th Cir.1981). Most of the *Johnson* factors applicable in cases under Title 11 have been codified in § 330(a)(3). The Court believes that the list of factors outlined in § 330(a)(3) provides a sufficient basis for the review of the Second Applica-

---

**6.** Under the terms of the confirmed plan, the future course of the Negligence Action will be determined by the board of directors of the reorganized debtor. All of the efforts of Crowe to date will be useful and relevant in that regard, although it is unclear whether Crowe will continue to represent the reorganized debtor in the Negligence Action.

tion. However, in order to be certain that its review is complete, it will examine all of the factors set forth in *Johnson,* noting those which are inapplicable. With respect to the fees sought for the efforts of the attorneys and the paralegals, the two most important factors in this case are the rates sought and the time expended.

### a. Hourly Rates

■ One of the central questions in this case is whether the hourly billing rates sought by Mr. Thomas ($175.00) and Mr. Levit ($110.00) are reasonable. In the First Application, Messrs. Thomas and Levit sought and were granted compensation at the hourly rates of $165.00 and $95.00, respectively. The $165.00 per hour rate represents the highest hourly rate which has been approved by this Court to date. Neither Clark, Holt, nor the United States Trustee have objected to the hourly rates for either Mr. Thomas or Mr. Levit.

The fifth factor enumerated in *Johnson* asks the court to consider the "customary fee" for similar legal services in the community. *Johnson,* 488 F.2d at 718. Upon the request of the Court, the parties submitted surveys of the market rate of various legal services in the community. The United States Trustee Office's survey filed on September 22, 1997, reported an average hourly attorneys' fee for bankruptcy related matters of about $160.00.[7] *See Report of the United States Trustee on Survey of Attorney and Paralegal Fee Rates Pursuant to Direction of the Court,* at p. 3. Doerner, Saunders, Daniel & Anderson ("Doerner"), the firm of which Mr. McDonald is a member, submitted its own survey of attorney and paralegal fees to the United States Trustee in a letter dated September 19, 1997. *Clark & Holt Exhibit 1.* The maximum hourly rate charged at Doerner for bankruptcy matters is $165.00. *Clark & Holt Exhibit 1* at pp. 3–4. Crowe

submitted its own survey. *Crowe & Dunlevy Exhibits 1 & 2.* According to that survey, hourly rates for an attorney with Mr. Thomas' experience in the Crowe survey range from approximately $184.00 to $190.00.[8] *Crowe & Dunlevy Exhibit 2.*

In this case, the issue of the appropriate hourly rate is not without its history. As the Court determines the appropriate hourly for Messrs. Thomas and Levit in the Second Application, it considers the rates found to be proper and sufficient in the First Application. Messrs. Thomas and Levit have previously been awarded compensation for their representation in the Negligence Action at the rates of $165.00 and $95.00 per hour respectively. The Court sees no reason to lower the rates to be awarded in this application. The question is whether to increase the rates as sought.

### b. Novelty and Difficulty

Factor two of the *Johnson* factors considers the novelty and difficulty of the issues involved. *Johnson,* 488 F.2d at 718. The *Johnson* case specifically refers to "[c]ases of first impression ... which may 'make new law.'" *Id.* This Court finds that the matter at hand, though not a simple matter, did not involve the difficulty and novelty that would demand increased compensation.

### c. Skill

"The skill requisite to perform the legal service properly" is the third factor cited in *Johnson. Id.* The Court finds that Messrs. Thomas and Levit possessed the skills necessary to effectively represent Tomlins in the negligence action. The Court believes that the rates as approved compensate adequately for the skills of counsel herein.

7. Simple average = $159.00; weighted average = $158.68, mean range = $150 to $160

8. Using the high rates range, the mean is $189.16; using the low rates range, the mean is $184.16; using the high rates range with highest hourly rate eliminated, the mean is $179.54; eliminating the highest rate and using the low rate range, the mean is at $174.09; eliminating both the highest and the lowest rate using the high rates range, the mean is $181.00, eliminating both the highest and the lowest rate and using the low rates range the mean is $177.50. *Crowe Dunlevy Summary of Evidence on Second Fee Application as Special Counsel to the Examiner,* at p. 3–4.

### d. Preclusion of Other Employment

The fourth *Johnson* factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation." *Id.* It was not argued to the Court nor is it apparent from any of the pleadings or other papers filed with this Court that Special Counsel endured any special hardship or preclusion of other employment brought about as a result of their representation of Tomlins in the Negligence Action.

### e. Fixed or Contingent Fee

The sixth factor considers the fee arrangement between the attorney and the client in helping to define the reasonable fee expectations. *Id.* This case was not billed on either a fixed or a contingent fee basis.

### f. Time Limitations

Factor seven refers to special time pressures delaying other "legal work" of the attorney, i.e., new counsel who is forced to prepare under time pressure "at a late stage in the proceedings." *Id.* No such time pressure was apparent in this case. Neither the number of hours worked by the attorneys nor the number of hours worked by the paralegals indicate significant time pressures. All requested extensions in the Negligence Action were granted.[9]

### g. Amounts Involved and Result Obtained.

According to testimony the efforts of Crowe may have helped to bring the entire case to a resolution. However, no argument was made that the results obtained were so extraordinary as to warrant an increase in the customary fees.

### h. Experience and Reputation

Factor nine considers "[t]he experience, reputation, and ability of the attorneys. . . . [T]he more experienced the attorneys", the higher the hourly rate. *Id.* at 718–719. In the October 15, 1997, hearing, the Court received evidence regarding Mr. Thomas' experience and reputation. This Court finds that Mr. Thomas is well qualified to handle bankruptcy and business related matters and has extensive litigation experience. The Court received very limited evidence regarding the qualifications of Mr. Levit; however, his ability was not questioned and he has previously been approved by the Court at the rate allowed herein. The Court expressly finds that the rates approved herein adequately compensate Crowe for the efforts of Messrs. Thomas and Levit.

### i. Undesirability

*Johnson* refers to attorneys being "face[d] [with] hardships in their communities because of their desire to help" a less sympathetic client. *Id.* at 719 (citations omitted). This factor is not present in this case.

### j. Nature and Length of Professional Relationship

The eleventh factor in *Johnson* considers the professional relationship between the client and the attorney. This Court finds no special circumstances considering the professional relationship which would warrant adjusting the hourly rates and the fees up or down.

### k. Awards in Similar Cases

The last factor considered in *Johnson* is "[t]he reasonableness of the fee in light of awards made in similar litigation. . . ." *Id.* As previously noted, awards in similar cases and rates previously approved have not exceeded $165.00 per hour. The Court does

---

**9.** As of the February 13, 1997 Scheduling Order, the Pre–Trial Conference was continued to May 21, 1997. By Order of May 19, 1997, the Pre–Trial Conference scheduled for May 21, 1997 was set as a preliminary Pre–Trial Conference. On May 22, 1997, after joint motions for revised discovery and motion deadlines were filed on May 16, 1997, discovery deadlines were extended to September 30, 1997 and a final pre–Trial Conference was set for October 15, 1997. Discovery deadlines were again extended on August 21, 1997, after joint motions for extension of scheduled deadlines were filed on August 20, 1997. The August 21, 1997 Amended Scheduling Order reset the discovery deadline to January 2, 1998, and the Pre–Trial Conference to February 4, 1998.

not intend to in any way imply that the handling of the Negligence Action was not up to the highest standards of lawyering. However, the Court finds it unwarranted to raise the hourly fees for Messrs. Thomas and Levit, Mr. Thomas' approved hourly rate will be the same as in the First Application, namely $165.00. Additionally, the Court finds that the rate of $95.00 per hour remains a reasonable rate for an attorney with the experience and reputation of Mr. Levit.

 All who appeared and took part in the evidentiary hearing on the Second Application affirmatively stated that they had no concern with the efforts expended by Messrs. Thomas and Levit, nor with the hourly rates sought for their services. The fact that the parties do not contest the rates is not the end of the inquiry. This Court has an independent duty to determine the reasonableness of the fees sought. *In re Cascade Oil, Inc.,* *supra,* 126 B.R. at 106 (citations omitted). As will be discussed *infra,* the Court has some concerns with the apparent lack of "billing judgment" exercised in the Second Application and the "lumping" of time entries by counsel. Either of these factors provides the Court with cause to reduce the fees sought. In this case, the Court's concerns, albeit real, are slight. Accordingly, the Court will address its concerns by awarding compensation for the services performed by Messrs. Thomas and Levit at the hourly rates approved in the First Application. The hourly rates to be awarded for the services of the paralegals are dealt with separately.

## 2. Reasonable Paralegal Hourly Rates

 Use of paralegals can be especially valuable when they can render certain legal services at less cost than if those same services were performed by an attorney. The Tenth Circuit has acknowledged the "widespread custom of separately billing for the services of paralegals...." *Ramos v. Lamm,* 713 F.2d 546, 558 (10th Cir.1983). Further, the Tenth Circuit requires that "[t]he court should scrutinize the reported hours and the suggested rates in the same manner it scruti-

nizes lawyer time and rates." *Id.* at 559. For the sake of brevity, the Court will only address the relevant factors regarding its decision on reasonable paralegal fees.

### a. Customary Fee

The surveys concerning customary rates for legal work in this community submitted by the parties showed an average paralegal rate of about $45–55 per hour. The United States Trustee Office's survey filed on September 22, 1997, reported an average hourly paralegal fee for bankruptcy related matters of between $50–55.[10] *See Report of the United States Trustee on Survey of Attorney and Paralegal Fee Rates Pursuant to Direction of the Court* at p. 3. Doerner's survey of attorney and paralegal fees listed its paralegal fees at $40 to $45 per hour. *Clark & Holt Exhibit 1* at p. 4. The hourly rates for paralegals in the Crowe survey range from $30 to $90 with an average of about $60.00. *Crowe & Dunlevy Exhibit 1.* Considering the market surveys submitted to the Court, this Court finds an hourly rate of $50.00 to be customary fees for paralegal services performed in the Tulsa market. The Court must now consider whether any extraordinary circumstances would warrant an increase of that amount.

### b. Qualification and Experience

The Court believes that each of the four paralegals possessed the requisite skill to perform the tasks asked of them. However, no evidence was presented that would warrant compensating for their services at a rate in excess of the market rate. The fact that all of the paralegals involved in the document review are certified legal assistants does not justify a rate above the norm. The fact that Ms. Williams has approximately 13 years of paralegal experience and experience in document review makes her well qualified for the task, but does not necessitate that her hourly rate exceed the market rate.

---

**10.** Simple average = $46.66 to $48.33; weighted average = $ 39.09 to $41.82, mean range = $45 to $55.

## c. Skill and Complexity

According to testimony at the hearing, the paralegals reviewed a large number of documents and subsequently categorized them using a computer database. It was not apparent from the testimony that any of the paralegals set up the database. There was some testimony that Ms. Williams was involved in setting up the fields for document categorization in the database; her role in this regard was not presented in great detail. None of the paralegals worked in a capacity of systems or computer experts. Furthermore, even though the case involved a large number of documents,[11] the task itself of categorizing the documents according to certain key words was not especially complex, but more within the realm of standard paralegal work.

## d. Time Limitations

There was some implication that the matter required the paralegals to work for extensive time periods and under substantial time pressure. As noted above, no extraordinary time pressure in the Negligence Action is apparent to the Court; all requested extensions were granted. *See supra* fn. 8. None of the paralegals worked on the Negligence Action on a full-time basis during the time covered in the Second Application. *See Second Application; see supra* fn. 2 and 3. Therefore, this Court is unable to discern any extraordinary time pressure.

## e. Divergent Hourly Rates

In this adversary proceeding, although the paralegals were billed at different hourly rates, there was no indication that they did substantively different work.[12] This Court is puzzled why the same type of work performed by one paralegal merits $85.00 per hour, and done by another merits only $65.00 per hour. No evidence was offered to the Court to justify the discrepancy. There was no indication that any of the paralegals had supervisory duties, were more efficient, or

generally performed the same tasks faster than other paralegals.

## f. Savings to the Client By the Use of Paralegals

The concept of significant savings to a client via the use of paralegals is seriously undermined when paralegal fees approach the same magnitude as attorneys' fees. In this case paralegal rates sought are as high as $85.00 per hour. In the First Application Mr. Levit, a licensed attorney and former judicial clerk, billed his services at $95.00 per hour. In light of that fact, paralegal fees at $85.00 per hour not only seem excessive but also sacrifice the superior legal knowledge and ability of an attorney at a minimal savings to the client.

This Court does not imply any dissatisfaction with the quality of the paralegal services rendered. The work-product itself and the testimony at the hearing convinced this Court that the paralegal work was valuable, of benefit to the estate, and handled with competence. However, to the Court's knowledge *no extraordinary circumstances or factors* would require that the paralegals in this matter be compensated at a rate higher than the market rate. Therefore, this Court finds that the paralegals in this case will be approved at the current market rate for the Tulsa community, which this Court has determined to be $50.00.

## C. Numbers of Hours Reasonably Spent

Factor one of the *Johnson* factors considers the "time and labor required." *Johnson*, 488 F.2d at 717. It is the responsibility of the trial judge to evaluate whether the hours claimed are reasonable. *Id.* "[N]oncompensable services should be deleted from attorney's records." *In re Lafayette Radio Electronics, Corp.*, 16 B.R. 360, 362 (Bankr.E.D.N.Y.1982). The court should examine " 'whether counsel substantially exceeded the bounds of reasonable effort,' and should disallow hours that were 'duplicative, unproductive, excessive, or otherwise unnec-

---

**11.** According to Mr. Thomas' testimony there were more than 45 "banker's boxes" of documents.

**12.** Ms. Williams was billed at $85.00 per hour; Ms. Thomison billed at $65.00 per hour; Ms. Ranck was billed at $70.00 per hour; and Ms. Hoover was billed at $80.00 per hour.

essary.'" *In re Shades of Beauty, Inc.*, 56 B.R. 946, 951 (Bankr.E.D.N.Y.1986) (citations omitted); *see In the Matter of Pothoven*, 84 B.R. 579, 584 (Bankr.S.D.Iowa 1988). As it determines the appropriate fee award, the Court will consider whether billing judgment was applied and whether lumping occurred.

## 1. Billing Judgment

■ Most courts find it mandatory that attorneys undertake a "good faith effort" to exercise "billing judgment." *In the Matter of Pothoven*, 84 B.R. at 584. As the Supreme Court stated in examining fees to be awarded to a "prevailing party" under 42 U.S.C. § 1988:

> Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40, 50 (1983) (citation omitted) (emphasis in original). This Court believes that the principles set forth in *Hensley* are equally applicable in bankruptcy cases. In submitting a bill to a client, an attorney is expected to thoroughly review the bill to make sure that the hours billed are justified. Although the Supreme Court describes the obligation as "ethical" (and it is), it is equally economic. Sophisticated clients in today's business world will not remain long with firms who do not trim the fat from their fee statements; the market is simply too competitive. This Court expects no less when the party liable for payment of the fee is a bankruptcy estate.

Paragraph eleven in the Second Application states that "[t]he fees sought by this application do not include any fees which

Special Counsel determined should be written off and not charged to the estates." *See Second Application*, p. 4. Mr. Thomas, when questioned, admitted that no time or monetary adjustments had been made to the Second Application, other than for entries made in error. As a result of this statement, the Court felt compelled to review the Second Application in great detail for the purpose of determining whether the mathematics contained in the Second Application were correct, and whether in fact all of the necessary time adjustments had been made. This review, greatly time consuming, is one which the Court expects to be completed by counsel.

■ Ms. Hoover, one of the paralegals included in the Second Application, only "worked" on the Negligence Action for 1.5 hours on February 13, 1997. *See Second Application of Special Counsel to Examiner for Compensation for Services Rendered and Reimbursement of Expenses Incurred, Attached Invoice.* It appears that the extent of her involvement was being briefed about the case.[13] Notwithstanding the statement in the Second Application to the contrary, Ms. Hoover's time certainly qualifies as time which "should be written off and not charged to the estate." *Second Application ... at p.* 4. Certainly no private client would pay for the time spent instructing a paralegal how to do work which was never performed by that paralegal. The 1.5 hours at $80.00 per hour for a total of $120.00 will be disallowed. Moreover, the failure to apply appropriate billing judgment with respect to Ms. Hoover's time casts an unfortunate shadow of doubt on the issue of whether Crowe exercised appropriate billing judgment when it submitted the Second Application.

## 2. Lumping

■ Our Court of Appeals has ruled that "it is the responsibility of the party seeking fees to submit fee applications which enable the Court to make an informed determination concerning the reasonableness of the hours claimed and the nature of the services

---

**13.** The billing entry reads "[C]onference with Terry M. Thomas and Ron Goins regarding document review at opposing counsel's office." For

reasons not apparent in the record, Mrs. Hoover did not participate in the actual review of documents.

performed." *In re Automobile Warranty Corp.*, 138 B.R. 72, 76 (Bankr.D.Colo.1991) (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir.1983); other citations omitted). Many courts will consider whether attorneys listed time entries separate and distinct or lumped entries together under one entry without indicating time spent on each task. *Id.* " 'Lumping' is a practice universally disapproved by bankruptcy courts ...." which will often lead a court to reduce the attorneys' fees by a fixed percentage, *see, e.g., Id.* at 77 (applying a ten percent (10%) reduction to the total amount of fees), or in the extreme disallow fees in their entirety. *See, e.g., In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr.E.D.Pa.1983).

■ This Court notes that a majority of the time sheet entries submitted by Special Counsel lump several tasks into one entry. The Court is mindful that this is the first contested fee application before it upon which the Court has seen fit to write an opinion outlining its position. The Court is also mindful that the Second Application is in substantially the same forth as the First Application, which was approved without objection or comment by the Court. As a result of both of these factors, the Court has reviewed the Second Application with some lenience.

■ This Court does not wish to encourage either the practice of lumping or the failure to exercise sound billing judgment prior to the submission of a fee application. However, the evidence submitted at the hearing on the Second Application established that the services rendered by Crowe were reasonable and necessary. The Court strongly believes that counsel seeking approval of fees by a bankruptcy court should not "lump" all of the tasks performed in a single day into a single time entry, with one mass allocation of bouts per day per professional. At the same time, the Court does not wish to inflict upon counsel unreasonable and unrealistic billing record requirements. The following comments of Judge Matheson are applicable here:

> In the typical bankruptcy case, the attorneys are involved in multitudinous matters.... The reality is that in the course of a single telephone call, or during a single conference, or even during the course of a hearing before the Court, the attorney may be discussing, evaluating and arguing with respect to many different matters, each of which could conceivably be the subject of a separate billing statement. ' While it is certainly desirable that counsel make an effort to separately allocate their time, this Court simply cannot accept the view of decisions such as *In re Amatex Corp.*, 70 B.R. 624 (Bankr.E.D.Pa. 1985) which appear to impose slavish and overburdensome record-keeping requirements which, in the final analysis, result in fee applications of such enormous length and detail that they are of little ultimate value to the Court in awarding fees.

*In re Frontier Airlines, Inc.*, 74 B.R. 973, 976 (Bankr.D.Colo.1987). The Court does not believe that the lumping of tasks in the Second Application has been of detriment to the estate. Therefore, the Court will not undertake a percent reduction of the total fees allowed. The Court's concerns with the "lumping" of entries and the lack of billing judgment are addressed through the hourly billing rates approved herein. The Court believes that it would be an unduly harsh measure to deny all compensation or to reduce fees by a set percentage. Nonetheless, having given notice as to what it expects, the Court will not be so lenient with future fee applications.

## D. Expenses

In the Second Application, Crowe seeks reimbursement of expenses in the amount of $81.45, which may be broken down as follows:

| | |
|---|---|
| The Copy Shop (Hand Placement of Originals) | $11.47 |
| Hearing Transcript | $24.00 |
| Long Distance Telephone | .30 |
| Copy Fee | $45.68 |

■ The entries for long distance telephone, replacement of original documents and preparation of a transcript of hearing are self-explanatory and are compensable. With respect to the $45.68 delineated as a "copy fee," the Court has no information as to the per copy charge which this represents. In all likelihood this is an eminently reasonable sum. As the United States Trustee

noted in her objection, the general "rate [of reimbursement] for copies in the Northern District of Oklahoma is $.15 [per page]." *United States Trustee's Objection to Second Application of Special Counsel to Examiner for Compensations for Services Rendered and Reimbursement of Expenses Incurred,* ¶ 3. On the basis of the record before it, the Court cannot discern whether the sums sought for copying costs are in accord with the $.15 per page norm, or whether cause exists in this case to compensate for copies at a higher rate. Accordingly, the Court will disallow the copying costs at the present time. This disallowance is without prejudice to the renewal of the request by Crowe with additional information as to the per copy charge sought.

### Conclusion

The Second Application is granted in part. Crowe is hereby allowed the following fees and expenses:

**Professional Fees**

| Professional | Hours | Rate | Total |
|---|---|---|---|
| Terry M. Thomas | 43.2 | $165.00 | $ 7,128.00 |
| Kenneth J. Levit | 18.9 | $ 95.00 | $ 1,795.50 |
| B. Sue Williams | 194.2 | $ 50.00 | $ 9,710.00 |
| Ronda Thomison | 149.4 | $ 50.00 | $ 7,470.00 |
| Carol Ranck | 45.7 | $ 50.00 | $ 2,285.00 |
| Ronda Thomison | 0 | $ 50.00 | 0 |
| **TOTAL FEES** | | | $28,388.00 |
| **TOTAL EXPENSES** | | | $ 35.77 |
| **TOTAL ALLOWANCE** | | | $28,423.77 |

A separate order consistent with this Memorandum Opinion is entered concurrently herewith.

### *JUDGMENT*

THIS MATTER comes before the Court pursuant to Crowe & Dunlevy's ("Crowe") Second Application of Special Counsel to Examiner for Compensations for Services Rendered and Reimbursement of Expenses incurred (the "Second Application") filed on August 6, 1997. A hearing on the matter was held on October 15, 1997. The issues having been duly heard and considered and a decision having been duly rendered, for the reasons set forth in the memorandum opinion filed concurrently herewith,

IT IS THEREFORE ORDERED that the Second Application filed on August 6, 1997 be, and the same hereby is, granted in part and denied in part.

IT IS FURTHER ORDERED that Crowe & Dunlevy is allowed fees in the total amount of $28,388.00.

IT IS FURTHER ORDERED that Crowe & Dunlevy is allowed expenses in the total amount of $35.77.