**In re Andria Vanessa KUSLER, Debtor.**

**Bankruptcy No. 97–05065–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

July 10, 1998.

Opinion Supplementing
Decision 8/17/98.

Steven W. Soulé, Tulsa, OK, trustee.

## ORDER REGARDING APPLICATION FOR ORDER TO PAY ADMINIS-TRATIVE EXPENSES

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Application for Order to Pay Administrative Expenses (the "Application") filed by Steven W. Soulé, Trustee ("Soulé" or "Trustee"). The Court has reviewed the Application. The Court finds that due and proper notice of the Application has been given to all creditors and parties-in-interest. The Court further notes that no objections to the Application have been filed. However, notwithstanding the lack of objections, the Court has concerns and/or inquiries regarding the following areas which must be addressed before the Court rules on the Application.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

### Factual Background

This Chapter 7 bankruptcy case was filed on October 29, 1997, by Andria Vanessa Kusler ("Debtor" or "Ms. Kusler"). Immediately

thereafter, Soulé was appointed to serve as Chapter 7 Trustee. On December 5, 1997, Soulé filed a motion asking that the Court appoint Soulé and his firm, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. (the "Firm"), to act as attorneys for the Trustee in this case. *Docket No. 6.* An order authorizing retention of the Firm by the Trustee was entered on December 5, 1997. *Docket No. 7.* In addition, Soulé filed a motion with this Court to authorize the employment of Earl Walters, CPA ("Walters") to provide accounting services to the estate. *Docket No. 8.* An order authorizing Walters' retention was entered on December 5, 1997. *Docket No. 9.* All fees sought by the Firm or Walters in connection with this case are subject to the final approval of this Court.

The only asset administered by the Trustee in this Chapter 7 case was a 1991 Ford Explorer (the "Vehicle"), in which the Debtor without objection, claimed a $3,000.00 exemption. The Vehicle was sold at public auction for $5,100.00.[2] After payment of an auctioneer's commission of $765.00, and remission to the Debtor of the sum of $2,617.50 in recognition of her claimed exemption, a balance of $1,717.50 remained. *Docket No. 21.* Upon receipt of the net sale proceeds, the Trustee placed the same in an interest-bearing bank account, generating an additional $7.72. Thus, the Trustee has available the sum of $1,725.22.

In the Application, the Trustee seeks approval of the following expenses:

| | |
|---|---|
| Trustee's Fees: | $ 498.04 |
| Trustee's Expenses: | 82.91 |
| Accountant's Fees: | 350.00 |
| Fees to Attorney for Trustee: | 794.27 |
| Total: | $1,725.22 |

The fees sought are equal to the total remaining funds in the estate; if these fees and expenses are allowed in their entirety, there will no distribution to any creditors of this estate.

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1998).

2. For reasons not made clear by a review of the Application or the court file, the Trustee sought

to sell the Vehicle on two separate occasions, and filed two separate notices of intent to sell. *See Docket Nos. 15 and 20.* The Vehicle was eventually sold on March 29, 1998. *Docket No. 21.*

## Conclusions of Law

This Court has previously ruled with respect to the standard for awarding fees to professionals employed on behalf of a bankruptcy estate under § 330 of the Bankruptcy Code.[3] "[T]he determination of professional fees allowable under § 330(a) entails a three-step process: '(1) is the billed service compensable; (2) was the service actual and necessary; and (3) is the billed amount reasonable considering the nature, extent and value of such services.'" *In re Reconversion Technologies, Inc.*, 216 B.R. 46, 52 (Bankr. N.D.Okla.1997) (citations omitted) (hereafter *"Reconversion"*). With every fee application, the applicant must "'prove and establish the reasonableness of each dollar, each hour, above zero.'" *Id.* at 51 (citations omitted). The burden is on the professional seeking payment from the estate to provide sufficient information regarding the services rendered and the expenses incurred to enable the Court to determine whether and in what amount fees should be allowed. "It is not the duty of the court to speculate or theorize as to the work performed." *Id.* (citation omitted). Furthermore, the Court has an independent duty to review fee applications, even if no party in interest objects to the amount of fees sought. *Id.* at 55; *see also In re Yates*, 217 B.R. 296, 300 (Bankr. N.D.Okla.1998); *see also In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir.1994).

## Benefit to the Estate

The "threshold issue" to be considered in awarding fees is whether the services rendered actually benefitted the estate. *See Reconversion*, 216 B.R. at 52, *citing In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir.1993). "Unless the Court determines that a benefit was conferred upon the estate, the inquiry goes no further, and the fees are not compensable." *Id.* Economic recovery is not the only indicator of "benefit to the estate." Courts should also consider "whether the services rendered promoted the bankruptcy process in accordance with the practices and procedures provided under the Bankruptcy Code." *In re Spanjer Bros., Inc.*, 203 B.R. 85, 90 (Bankr.N.D.Ill. 1996); *see also In re Holder*, 207 B.R. 574, 584 (Bankr.M.D.Tenn.1997) (and cases cited therein). However, in Chapter 7 cases, the strongest indicator of "benefit" is a distribution to creditors. When the liquidation of assets results in payment only of the professionals responsible for the liquidation, courts are required to review the matter with great scrutiny. This Court agrees with those courts which have said that "[a]bsent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals." *In re Toney*, 171 B.R. 414, 415 (Bankr. S.D.Fla.1994); *accord, In re Auto Parts Club, Inc.*, 211 B.R. 29 (9th Cir. BAP 1997).

3. The operative provisions of § 330 provide as follows:

§ 330. Compensation of officers

(a)(1) After notice to the parties in interest ... the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(a)(2) The court may, on its own motion or the motion of the United States Trustee, the United States Trustee for the District or region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(a)(3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable, based upon the customary compensation charged by comparable skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(1–3) (West 1998).

In the present case, all of the fees incurred relate to the sale of the Vehicle. The sale did not generate sufficient monies to pay even those fees. The net effect of the Trustee's actions was to take the Vehicle away from the Debtor, return nothing to the creditors of this estate and pay the Debtor less than the allowed amount of her allowed exemption.[4] The Court is well aware that it has the benefit of hindsight and wishes to more fully understand the methods and purposes of the Trustee before issuing a ruling. Accordingly, the Court will schedule an evidentiary hearing where Soulé and the Firm may explain to the Court how the services rendered benefitted the estate.

*Billing Judgment*

This Court has defined the concept of "billing judgment" in the following manner:

> As the Supreme Court stated in examining fees to be awarded to a "prevailing party" under 42 U.S.C. § 1988:
>
> > Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority."
>
> *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40, 50 (1983) (citation omitted) (emphasis in original). This Court believes that the principles set forth in *Hensley* are equally applicable in bankruptcy cases. In submitting a bill to a client, an attorney is expect-

ed to thoroughly review the bill to make sure that the hours billed are justified. Although the Supreme Court describes the obligation as "ethical" (and it is), it is equally economic. Sophisticated clients in today's business world will not remain long with firms who do not trim the fat from their fee statements; the market is simply too competitive. This Court expects no less when the party liable for payment of the fee is a bankruptcy estate.

*Reconversion*, 216 B.R. at 57. Counsel for a chapter 7 trustee are expected to exercise the same manner and type of "billing judgment" that they would exercise for private clients. *In re Crawford Hardware, Inc.*, 82 B.R. 885, 888 (Bankr.S.D.Ohio 1987).

The Application does not detail what, if any, "billing judgment" was applied by the Firm in this case. The only potential reference to "billing judgment" contained in the *Application* is a statement that the fees sought have been "voluntarily reduced" from $1,035.50 to $794.27, a number which equals the balance of funds remaining in the estate. The reduction of fees sought to an amount equal to the funds on hand does not constitute the exercise of billing judgment. It is not apparent from the Application whether additional services were performed for which compensation is not sought. Before ruling upon the Application, the Court requires additional information in this regard.

*Hourly Rates*

Certain of the fees sought in the Application are for the services of "CB Hefner" ("Ms. Hefner"), one of the paralegals employed by the Firm. This Court has ruled that, as a general matter, the customary hourly rate for paralegals in the Tulsa, Oklahoma market is $50.00 per hour. *See Reconversion*, 216 B.R. at 55. In a previous case,

---

4. Under Oklahoma law, a debtor is allowed to exempt $3,000.00 in value in a motor vehicle. Okla.Stat.Ann. tit. 31 § 1(13) (West 1991). In the present case, Ms. Kusler received only $2,617.50 when the Vehicle was sold. It appears that the Trustee, pursuant to an agreement with the Debtor (who appears in this Court without the benefit of counsel), surcharged the Debtor with one-half of the costs of the auction. This Court is unaware of any authority which would allow a bankruptcy trustee to impair the exemption claimed by a debtor with the costs of sale of an asset subject to a valid claim of exemption. At the hearing to be held in this matter, the Trustee is hereby instructed to provide the Court with the authority he relied upon in assessing this surcharge. In the absence of the same, the Trustee will be ordered to remit an additional $382.50 to Ms. Kusler so that she may receive the full benefit of her exemption.

after an evidentiary hearing in which Ms. Hefner's qualifications and abilities were presented to the Court, the Court authorized compensation for Ms. Hefner's services at the rate of $70.00 per hour. However, the Firm seeks compensation for certain tasks performed by Ms. Hefner at the rate of $80.00 per hour. *See Application,* Time Entries for CB Hefner dated 12/04/97, 2/19/98, 2/27/98, 3/25/98 and 3/30/98. All other entries for Ms. Hefner are at the previously approved rate of $70 per hour. Unless the Trustee desires to present evidence to justify the higher rate, the Court will not consider awarding fees for Ms. Hefner's services at the rate of $80.00 per hour.

*Trustee Time/Attorney Time*

It is well established that a Chapter 7 Trustee is not entitled to compensation as an attorney for time spent on the performance of his or her statutory duties. Section 328(b) of the Bankruptcy Code provides that:

> (b) If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

§ 328(b). This Court finds persuasive the following analysis of Senior United States District Judge Thomas R. Brett:

> [I]f the bankruptcy court authorizes the trustee to serve as his or her own attorney under Section 327(d), the trustee must distinguish compensation for legal work from work generally performed by the trustee without the assistance of counsel. 11 U.S.C. § 328(b). This statute has been interpreted as requiring the denial of compensation to an attorney appointed to rep-

resent the trustee for performing the trustee's statutory duties. *See In re Hunt's Health Care, Inc.,* 161 B.R. 971, 983 (Bankr.N.D.Ind.1993); *In re Butterbaugh,* 135 B.R. 507, 510 (Bankr.N.D.Ohio 1991) ("Allowing the trustee's counsel to be compensated for services which can and should be performed by the trustee not only depletes the estate unnecessarily, but violates the Code itself."); *In re Gary Fairbanks, Inc.,* 111 B.R. 809, 811 (Bankr. N.D.Iowa 1990) ("While trustees generally perform all ministerial and administrative duties of the estate, it is the responsibility of an attorney appointed to represent the estate to exercise professional skills and expertise beyond the ordinary knowledge and skill of the trustee."). The recognized differences between the duties of counsel and the trustee reflect a traditional understanding of the role of counsel.

In general, professional time is limited to those tasks performed while representing the trustee in the prosecution of contested matters and adversary proceedings, attendance at court hearings in the capacity of attorney or other professional when the trustee has an interest, the preparation of professional related·applications, and the performance of other specialized services that cannot be performed practically or lawfully by the trustee without engaging ·the services of a professional. *In re Holub,* 129 B.R. 293, 296 (Bankr.M.D.Fla. 1991). Indeed, if the duties of counsel were equivalent to those of the client, the duplication of services clearly would not be in the best interest of the estate. *See* 11 U.S.C. § 330(a)(4)(A)(i).

*Hansen, Jones & Leta, P.C. v. Segal,* 220 B.R. 434, 458 (D.Utah 1998) [5]; *See also In re Polk,* 215 B.R. 250, 253 (Bankr.M.D.Fla.1997) ("The statutory duties of the· trustee are noncompensable as professional time if performed by the trustee's attorney"). The burden rests upon the trustee to establish that the services for which compensation is sought constitute services outside the scope of the trustee's ordinary duties. *See In re*

**5.** Judge Brett, a Senior United States District Judge for the Northern District of Oklahoma, was sitting in Utah by designation. As a result, even though this case is not technically controlling upon this Court, the fact that it was written by a District Judge of this district causes the Court to give the case great weight.

*Bosselman,* 125 B.R. 569, 570 (Bankr.D.Neb. 1991); *see also In re Shades of Beauty,* 56 B.R. 946, 949–950 (Bankr.E.D.N.Y.1986), *aff'd in part and rev'd in part* 95 B.R. 17 (E.D.N.Y.1988). In order to meet this burden, the trustee must provide detailed time records and descriptions of services performed which establish that the services for which compensation is sought are legal in nature. *See In re Taylor,* 66 B.R. 390, 393 (Bankr.W.D.Pa.1986).

█ Many of the Chapter 7 trustees in this district account for their time spent performing the duties of trustee, showing the same on their fee applications while noting that no compensation other than the statutory trustee's fee is being sought. Such a listing is of great assistance to the Court as it reviews fee applications. It gives the Court a broader view of the history of the case and allows the Court to clearly observe the demarcation between Trustee's duties performed and professional services rendered. The Application contains no listing of the time spent by Soulé performing his duties as trustee. Based upon its review of the Application, the Court believes that all or some of the time spent on the following entries constitutes work of the trustee for which compensation over and above an appropriate trustee's fee should not be allowed:

| Date | Timekeeper | Transaction | Time/Amount |
|---|---|---|---|
| 12/4/97 | SWS | Telephone call with Debtor re exemption claims and turnover of vehicle. Review and revise asset case pleadings. | .8/$108 .00 |
| 12/4/97 | CBH | Review files re new asset case; Phone call with Sue Delaney re Asset Liquidation | .7/$56.00 |
| 1/19/98 | CBH | Initial Draft of Motion and Notice for Sale of Asset/Vehicle and Draft Order for same | 1.1/$77.00 |
| 1/21/98 | SWS | Revise Motion to Sell Vehicle | .4/$56.00 |
| 1/28/98 | CBH | Review file re potential equity; Draft letter to pro se debtor re payment of equity to estate or public auction | .6/$42.00 |
| 2/4/98 | CBH | Conference with SWS re offer from third party as to sale of assets and proceed distribution | .6/$42.00 |
| 2/6/98 | CBH | Review files as to vehicle value; Draft letter to debtor re agreement to terms of sale | .6/$42.00 |
| 2/19/98 | CBH | Review documents re proper notice; Initial draft of notice to sell | .8/$56.00 |
| 2/24/98 | SWS | Review and revise Motion to Sell Vehicle | .6/$84.00 |
| 2/25/98 | MJD | Telephone conference with debtor regarding sale of vehicle | .1/$4.50 |

| | | | |
|---|---|---|---|
| 2/27/98 | CBH | Conference with Sue Delaney re asset valuation and potential bidders/procedure | .6/$48.00 |
| 3/19/98 | CBH | Conference with Sue Delaney re upcoming auction and prep for Order | .4/$28.00 |
| 3/25/98 | CBH | Review files for completion of sale documents and phone call with Delaney re auction/data | .4/$32.00 |
| 3/30/98 | CBH | Update files per phone call with Sue Delaney as to auction, successful bidder, etc. | .5/$40.00 |
| 4/2/98 | CBH | Draft Trustee's Bill of Sale | .7/$49.00 |
| 5/22/98 | CBH | Review files and docket sheet re status for closing | .6/$42.00 |

---

Before issuing a final ruling with respect to these fees, the Court will provide the Trustee with an opportunity to present evidence and/or argument with respect to the same.

*Amount of Time Spent*

 Assuming that the time at issue constitutes compensable attorney/paralegal time, this Court has previously ruled that one of the factors to be considered in awarding compensation is the amount of time spent on a particular task. *See Reconversion,* 216 B.R. at 52. In most cases, the Court is loath to question the time spent by attorneys and paralegals on any particular task. This judge is not so far removed from the rigors of private practice as to have forgotten that quality legal work takes time. That being said, the Court has concerns with the following time entries:

| Date | Timekeeper | Transaction | Time/Amount |
|---|---|---|---|
| 1/19/98 | CBH | Initial Draft of Motion and Notice for Sale of Asset/Vehicle and Draft Order for same | 1.1/$77.00 |
| 1/21/98 | SWS | Revise Motion to Sell Vehicle | .4/$56.00 |
| 2/19/98 | CBH | Review documents re proper notice; Initial draft of notice to sell | .8/$56.00 |
| 2/24/98 | SWS | Review and revise Motion to Sell Vehicle | .6/$84.00 |

---

There appears to be nothing unusual about the Vehicle or its sale. The Notice to Sell Vehicle used in this case is a standard notice, something that the Court believes is found on the word processor of every Chapter 7 trustee in this district. It is a mere two (2) pages in length. As a result, the Court is hard pressed to find that it is reasonable to take a total of almost two (2) hours of paralegal time to draft the document (in effect drafting the same document twice), or one (1) hour of

attorney time to review and revise it. The Court notes that, based on the Application, the Trustee, acting as his own counsel, took *thirty-six (36) minutes* to review and revise the motion to sell *the second time*. To put it bluntly, the Court does not understand how this is possible. The Trustee and the Firm will be given an opportunity to explain the time spent on these matters to the Court at the upcoming evidentiary hearing.

*Trustee's Fee*

■ The analysis regarding benefit to the estate goes not only to the professional fees sought by the Firm, but to the statutory fee due to Soulé as trustee under § 326(a) of the Bankruptcy Code as well. *See* § 326(a) (fee schedule set forth therein is maximum). As one treatise has noted:

> The compensation provisions of section 326 are outer limits on the amount of compensation that may be paid to a trustee and should not be viewed as an entitlement to the maximum fees specified. The amount of compensation allowed a trustee is subject to the discretion of the court in determining the reasonable value of the services provided to the estate by the trustee.

3 King *et. al., Collier on Bankruptcy* ¶ 326.02[1] at p. 326–4 (15th ed.1998) (footnote omitted). In this case, Soulé appears to seek the maximum trustee fee allowable under § 326(a). The Court will also consider the issue of an appropriate trustee's fee at the evidentiary hearing scheduled pursuant to this Order. As it does so, the Court will consider the benefit to the estate of the Trustee's services in this case.

*Accountant's Fees*

■ In the Application, Soulé seeks authority to pay $350.00 in fees to Walters. The only explanation contained in the Application regarding Walters' fees is an invoice for $350.00 labeled "preparation of income tax returns." There is absolutely no detail as to what tasks were performed by Walters and how much time was involved. While not desiring an expository essay, the Court does require some detail and substance concerning the tasks performed by Walters to determine their necessity. *See Reconversion,* 216 B.R. at 51–52. "[I]t is the responsibility of the party seeking the fees to submit fee applications which enable the Court to make an informed determination concerning the reasonableness of the hours claimed and the nature of the services performed." *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983). In addition, the Court requires an explanation of how these services benefitted the bankruptcy estate. The Trustee and Walters will be given an opportunity to provide more detail to the Court regarding the services performed.

### Conclusion

Cases such as this one are quite troubling for the Court. If the Application is approved in its entirety, the only parties who will benefit from the administration of this estate are the Trustee and those whom he has hired. Not a single pre-petition creditor of this estate will be paid. Debtor has lost her principal means of transportation. While the Court understands that it has the benefit of hindsight, this factual scenario is subject to strict scrutiny, now and in the future.

■ Trustees are expected to use their power wisely, administering assets only when doing so is likely to result in a distribution to creditors of the estate, and ever mindful of the expenses they incur. Similarly, this Court requires trustees to police their own time entries, and seek compensation over and above the statutory trustee's fee only for "services which cannot be performed practically or lawfully by the trustee without engaging the services of a professional." *Hansen, Jones & Leta, P.C. v. Segal, supra,* 220 B.R. at 458. If these standards are not adhered to, one of the fundamental tenets of § 330 of the Bankruptcy Code, namely, the requirement that services rendered benefit the estate, will be rendered meaningless.

In order to resolve these matters, the Court will set the matter for evidentiary hearing, at which time Soulé, the Firm, and Walters will be given the opportunity to address the Court's concerns. Should Soulé, the Firm, and/or Walters desire to supplement the Application and/or provide any additional written material for the Court's review, all such material should be provided no

later than three (3) days prior to the date of the hearing.

IT IS THEREFORE ORDERED that a **hearing shall be scheduled on the Application for Order to Pay Administrative Expenses on the 27th day of July, 1998, at 9:30 a.m.** in Courtroom 2, The Federal Building, 224 South Boulder Avenue, Tulsa, Oklahoma, at which time Soulé, Walters and the Firm shall be prepared to address the concerns of the Court set forth herein.

IT IS FURTHER ORDERED that any amendments to the Application for Order to Pay Administrative Expenses or written materials which the parties wish the Court to consider should be filed with the Clerk of this Court no later than July 24, 1998.

### SUPPLEMENTAL MEMORANDUM OPINION REGARDING APPLICATION FOR ORDER TO PAY ADMINISTRATIVE EXPENSES

THIS MATTER comes before the Court pursuant to the Application for Order to Pay Administrative Expenses (the "Application") filed by Steven W. Soulé, Trustee, ("Soulé" or "Trustee"). Pursuant to the Order of this Court entered on July 10, 1998, (the "July 10, 1998, Order")[1] an evidentiary hearing (the "Hearing") was held on the Application on July 27, 1998. Appearing were Soulé and Katherine Vance, Assistant United States Trustee. The Court received evidence in the form of testimony and documents. Following the review of said evidence, the Court grants the Application in part.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[2] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

1. This Memorandum Opinion should be read in conjunction with the July 10, 1998, Order. The legal analysis and conclusions contained in the July 10, 1998, Order are applied in this Order. In addition, all defined terms in the July 10, 1998, Order are given the same meaning in this Order.

### Discussion

At the Hearing, the Court heard testimony from Soulé and Earl Walters ("Walters"), an accountant hired by Soulé to perform certain services for the estate. In addition, the Court received documents regarding the services performed by Walters and the Trustee. For the reasons set forth herein, the Court finds that certain of those services provided a benefit to the estate and awards fees and expenses to compensate for the same.

### Accountant's Fees

Walters testified that he performed accounting duties for the estate. Those included preparation of federal and state tax forms. Each of the services performed by Walters was necessitated by the liquidation of the Vehicle by Soulé as discussed in the July 10, 1998, Order. If the Vehicle had not been sold, Walters' services would not have been needed.

The Court has reviewed the application seeking approval of the appointment of Walters as accountant for the estate. Paragraph six of that application reads as follows:

[S]hould Walters be approved as accountant for the Trustee, compensation and out-of-pocket expenses shall be requested as follows:

a. regularly hourly rates for professional services at *$65.00 per hour.*

b. actual postage, copies and long distance costs expended by the accountant shall be reimbursed.

*Docket No. 8,* ¶ 6 (emphasis added). According to the evidence received at the Hearing, Walters spent a total time of 2.50 hours in performing these services. Walters provided no breakdown of the time spent performing any particular task. Walters seeks a total fee of $350.00 for his services. An award of $350.00 would result in an effective hourly rate of $140.00 per hour. In his testimony, Walters indicated that the $350.00 figure sought herein was a "minimum" figure which

2. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1998).

he charged as an accountant in all Chapter 7 bankruptcy cases. *Transcript of Hearing Held July 27, 1998,* (hereafter *"Transcript"*) p. 13, line. 22 through p. 14, line 1. As noted, when Walters' employment was approved by this Court, it was approved on the basis that Walters would be compensated at the rate of $65.00 per hour. In this Court, absent approval by specific order, there are no guaranteed minimum amounts of payment for professional services.

The Court is disturbed by the lack of scrutiny by either Soulé or the Office of the United States Trustee regarding Walters' time. He is not entitled to a flat fee of $350.00. He is not entitled to be compensated at the rate of $140.00 per hour. He is not entitled to be compensated absent compliance with Bankruptcy Rule 2016. *See In re Reconversion Technologies,* 216 B.R. 46, 51 (Bankr.N.D.Okla.1997). Walters is admonished that, in the future, he will be expected to strictly comply with Bankruptcy Rule 2016, providing a detailed statement of the services he has rendered and requesting compensation at the hourly rate contained in the application for his employment. Should he fail to do so, Walters will be denied compensation.

The maximum compensation to which Walters would be entitled is $162.50 which represents 2.5 hours of time compensated at the rate of $65.00 per hour. The Court has reviewed Walters' services with an eye toward their benefit to this bankruptcy estate. Because, as a result of this Order, funds will be available for distribution to unsecured creditors, Walters' services have benefitted the estate to some degree. However, given that: (1) Walters has sought compensation well in excess of that originally sought in his application; (2) his services have been of limited benefit to the estate; and (3) Walters failed to provide a detailed

statement of the time spent on each particular task, the Court awards Walters the sum of $100.00 as compensation in this case.

## Compensation to Soulé and the Firm

### Benefit to the Estate

In the July 10, 1998, Order, the Court expressed its concern with respect to whether the services performed by Soulé and the Firm benefitted the bankruptcy estate. Soulé testified that he believed that it was in the estate's best interest to sell the Vehicle. The factual basis for this belief is unclear. Soulé admitted that, at the time the decision was made to sell the Vehicle, the deadline to file claims in this case had passed. However, for reasons unknown to the Court, Soulé did not review the claims file in this case to determine the approximate percentage of distribution which would be available to unsecured creditors.[3]

The only asset claimed by the Trustee in this case was the Vehicle. Soulé testified that he believed, based upon the appraisal from his auctioneer, that the Vehicle would sell for between $5,200.00 and $6,200.00.[4] If one assumes a sale price for the Vehicle of $6,200.00, the *maximum* available for distribution would have been approximately $1,000.00, or 1.76% of unsecured claims. The calculations are as follows:

| | |
|---|---|
| Total claims: | $57,359.78 |
| Sale price of Vehicle: | $ 6,200.00 |
| Expenses set forth in Application: | |
| Exemption: | 2,617.50 |
| Auction fee (15%): | 930.00 |
| Accountant: | 350.00 |
| Trustee Fee | 498.04 |
| Attorney's Fee: | 794.27 |
| TOTAL EXPENSES | 5,189.81 |
| Amt available | 1,010.19 |
| Percentage distribution: | 1.76%[5] |

3. Soulé testified that copies of the claims were not readily available to him. While this may be true, it does not excuse his failure to review the case file, which is available upon request from the Clerk of this Court. In addition, this Court offers computerized access to the claims docket in every case at minimal cost. Using either avenue (file review or computerized review), Soulé could easily determine at least the dollar amounts of the claims as filed.

4. Soulé noted in his testimony and argument that the Debtor had scheduled a value for the Vehicle of $7,500. The Court does not believe that Soulé gave any weight to the Debtor's valuation, or that he should have done so. Having hired a professional to appraise the Vehicle, Soulé is held to her estimate.

5. These calculations assume that the surcharge of $382.50 in sale expenses against the Debtor's

Even if the Vehicle had sold for the maximum price which Soulé could have reasonably expected, its sale would have resulted in a minimal distribution to unsecured creditors, one far less than the 3% distribution which Soulé described as of "meaningless value to those [unsecured] creditors." *See Supplement to Application for Order to Pay Administrative Expenses, Docket No. 29,* p. 3. Soulé knew or should have known this at the time the Vehicle was sold; the claims deadline had passed, and all claims had been on file for over a month.

In order for the services at issue to provide a benefit to the estate in this case, they must result in a distribution to unsecured creditors. No other fundamental aspect of the bankruptcy process, such as litigation of an objection to discharge, preservation of assets or maintenance of an ongoing business, has been served. Accordingly, in order for the services to be compensable in any fashion, the fees for the same must be reduced and creditors must be paid something. The determination of whether that distribution is "meaningful" is best left to the recipient of the funds.

*Trustee's Fees*

■ As indicated in the July 10, 1998, Order, Soulé has sought the maximum trustee fee allowable under Section 326(a) of the United States Bankruptcy Code. *See* 11 U.S.C. § 326(a) (West 1998). The Court, based upon the facts of this case and the its own experience, does not believe the maximum Trustee's fee is justified in this case. Accordingly, the Court awards Soulé the sum of $250.00 as a Trustee's fee in this case.

*Trustee Time/Attorney Time*

In its July 10, 1998, Order, this Court went into great detail regarding the standards for awarding compensation for attorney's fees to attorneys for Chapter 7 trustees. In Soulé's written response to the Court, he stated that he would "address each of these specifically

at the hearing." Unfortunately, he failed to do so. Soulé merely testified that many of the entries fell into what he saw as a "gray area," where the time could reasonably be considered either attorney fee time or trustee time. *Transcript,* p. 28, lines 3 through 8. The only substantive area in which the Trustee provided testimony was with respect to the preparation of the bill of sale for the Vehicle, which he believed should be compensated as attorney time.

As at least one court has noted,

> Since a bankruptcy trustee is responsible for monitoring all fees requested in a case, and has a statutory duty to object to any inappropriate fees, a conflict develops when the trustee's own law firm is retained as his counsel and the trustee "is interested in obtaining the largest fee recovery on behalf of his firm."

*In re Kurtzman,* 220 B.R. 801, 804 (Bankr. S.D.N.Y.1998) (citation omitted), *affirmed,* 220 B.R. 538 (S.D.N.Y.1998). To put it another way,

> When a Trustee retains his or her own firm, or a firm with which he or she has an association or close professional connection, that relationship will more than likely preclude him or her from being as strict as he or she might be with other firms when overseeing fees charged and sought.

*In re Allied Computer Repair, Inc.,* 202 B.R. 877, 882 (Bankr.W.D.Ky.1996) (citation omitted). The trustee who hires his or her own firm as counsel is at a disadvantage as he or she reviews the professional fees sought by his or her own firm. Many times the tasks at issue have been performed by the trustee; in almost all situations, the trustee/attorney faces the pressure faced by all lawyers to maximize profitability. Some courts have responded by requiring a showing of "cause" by a trustee in order to hire his or her own firm. *See In re Cee Jay Discount Stores, Inc.,* 171 B.R. 173, 176 (Bankr.E.D.N.Y.1994). Other courts, on a case-by-case basis, have

---

claim of exemption was proper, and that the Firm was awarded the sum of $794.27 in fees, as opposed to the $1,035.50 in actual fees set forth in the Application. If either of these amounts are added back into the mix (i.e., Debtor is given

the entire benefit of her exemption, and/or the Firm is awarded the entire amount of fees and expenses), the amount available for distribution to unsecured creditors is significantly reduced.

disqualified trustees from hiring their own firms. *See In re Kurtzman*, 220 B.R. at 804.

This Court is not prepared to say that trustees should not be able to hire their own firms as counsel, or that a hearing should be held in every such case to determine that "cause" exists for retention of the trustee's firm. By and large, retention of the trustee's own firm has been a very effective method of providing quality representation to the bankruptcy estates in this district. However, with the privilege of hiring one's own law firm comes a commensurate burden to strictly review the tasks included and compensation sought in fee applications. The trustee is not entitled to compensation as an attorney for services "which can and should be performed by the trustee." *Hansen, Jones & Leta, P.C. v. Segal*, 220 B.R. 434, 458 (D.Utah 1998) (citation omitted). It is the opinion of this Court that services which fall into this nebulous "gray area" constitute trustee time and may not be separately compensated.

The following services in this case constitute performance of the duties of the Trustee for which no additional compensation is appropriate:

| Date | Timekeeper | Transaction | Time/Amount |
|------|-----------|-------------|-------------|
| 12/4/97 | SWS | Telephone call with Debtor re exemption claims and turnover of vehicle. Review and revise asset case pleadings. | .8/$108.00 |
| 12/4/97 | CBH | Review files re new asset case; Phone call with Sue Delaney re Asset Liquidation | .7/$56.00 |
| 1/19/98 | CBH | Initial Draft of Motion and Notice for Sale of Asset/Vehicle and Draft Order for same | 1.1/$77.00 |
| 1/21/98 | SWS | Revise Motion to Sell Vehicle | .4/$56.00 |
| 1/28/98 | CBH | Review file re potential equity; Draft letter to pro se debtor re payment of equity to estate or public auction | .6/$42.00 |
| 2/4/98 | CBH | Conference with SWS re offer from third party as to sale of assets and proceed distribution | .6/$42.00 |
| 2/6/98 | CBH | Review files as to vehicle value; Draft letter to debtor re agreement to terms of sale | .6/$42.00 |
| 2/19/98 | CBH | Review documents re proper notice; Initial draft of notice to sell | .8/$56.00 |
| 2/24/98 | SWS | Review and revise Motion to Sell Vehicle | .6/$84.00 |
| 2/25/98 | MJD | Telephone conference with debtor regarding sale of vehicle | .1/$4.50 |
| 2/27/98 | CBH | Conference with Sue Delaney re asset valuation and potential bidders/procedure | .6/$48.00 |

| | | | |
|---|---|---|---|
| 3/19/98 | CBH | Conference with Sue Delaney re upcoming auction and prep for Order | .4/$28.00 |
| 3/25/98 | CBH | Review files for completion of sale documents and phone call with Delaney re auction/data | .4/$32.00 |
| 3/30/98 | CBH | Update files per phone call with Sue Delaney as to auction, successful bidder, etc. | .5/$40.00 |
| 4/2/98 | CBH | Draft Trustee's Bill of Sale | .7/$49.00 |
| 5/22/98 | CBH | Review files and docket sheet re status for closing | .6/$42.00 |

---

A trustee is not entitled to hire a lawyer to communicate with an auctioneer regarding the details of an upcoming sale.[6] Accordingly, no compensation other than the trustee's fee will be awarded for these services.

*Amount of Time Spent*

▮ In its July 10, 1998, Order, the Court had concerns with the time spent reflected by the following time entries:

| Date | Timekeeper | Transaction | Time/Amount |
|---|---|---|---|
| 1/19/98 | CBH | Initial Draft of Motion and Notice for Sale of Asset/Vehicle and Draft Order for same | 1.1/$77.00 |
| 1/21/98 | SWS | Revise Motion to Sell Vehicle | .4/$56.00 |
| 2/19/98 | CBH | Review documents re proper notice; Initial draft of notice to sell | .8/$56.00 |
| 2/24/98 | SWS | Review and revise Motion to Sell Vehicle | .6/$84.00 |

---

At the Hearing, Soulé provided no additional information regarding these time entries except his opinion that the time spent was "justified." The Court respectfully disagrees. The Court is unwilling to award compensation for three hours of time for the

**6.** Even if the Court were inclined to consider the tasks performed as ones requiring the services of counsel, the Court takes significant issue with the time spent on several of these tasks. For example, on February 27, 1998, Ms. Hefner spent six-tenths of an hour, or *thirty-six minutes*, discussing the sale of a single motor vehicle and the bidding procedure with a professional auctioneer who has been represented to the Court on several occasions as an expert in the area of motor vehicle sales. Similarly, Ms. Hefner spent seven-tenths of an hour, or *forty-two minutes*, drafting a

bill of sale for the Vehicle. The bill of sale was not offered into evidence at the Hearing; however, it is difficult for the Court to conceive that a bill of sale for an automobile is such a novel document in the course of performing the duties of a Chapter 7 Trustee as to consume the better part of an hour in its preparation. The Court is also left to ponder why this task was not performed by the auctioneer retained by the estate. Surely that auctioneer does not hire an attorney to prepare every bill of sale delivered in the ordinary course of her business.

drafting of a form notice. In addition, the Court is not convinced that drafting of these documents is fully compensable as attorney time. If a trustee needs an attorney to draft these documents, then the trustee must be represented by a professional in virtually every asset case. One is left to ponder what duties, if any, a trustee can perform in a Chapter 7 asset case without the benefit of counsel. The total dollars sought with respect to these tasks total $273.00. The Court awards $100.00 for the same. The Court awards a total of $387.00 in fees to the Firm.

## Surcharge of Costs of Sale Upon Debtor's Exemption

■ As noted in the July 10, 1998, Order, the Trustee in this case surcharged the Debtor's claim of exemption in the Vehicle for a portion of the costs of sale. The Court is not aware of any legal basis for surcharging the Debtor's exemption with any portion of the costs of sale. Soulé admitted that, in· his mind, Debtor was entitled to her claimed exemption in the Vehicle. *See Transcript*, p. 20, line 13 though p. 22, line 6. At the Hearing, Soulé indicated that he was willing to refund the sums surcharged should the Court so order. The Court does hereby so order. Soulé is directed to pay to the Debtor the additional sum of $382.50.

A separate judgment in accordance with this Memorandum Opinion is entered concurrently herewith. As part of said judgment, Soulé will be required to file an amended final report within fifteen (15) days of the date of this Order distributing the remaining sums on hand to creditors as their interests may appear.

### *JUDGMENT REGARDING APPLICATION FOR ORDER TO PAY AD-MINISTRATIVE EXPENSES*

THIS MATTER comes before the Court pursuant to the Application for Order to Pay Administrative Expenses (the "Application") filed by Steven W. Soulé, Trustee, ("Soulé" or "Trustee"). In accordance with the terms and provisions of the Memorandum Opinion entered this date, and the Order of this Court entered on July 10, 1998,

IT IS THEREFORE ORDERED that the Application for Order to Pay Administrative Expenses be, and the same hereby is, granted in part and denied in part.

IT IS FURTHER ORDERED that Steven W. Soulé is awarded a Trustee's fee of $250.00 in this matter.

IT IS FURTHER ORDERED that Earl Walters is awarded the sum $100.00 as compensation for the professional services he provided to the estate.

IT IS FURTHER ORDERED that the firm of Hall, Estill, Hardwick, Gable, Golden and Nelson, P.C. is awarded the sum of $387.00 as attorneys for the Trustee.

IT IS FURTHER ORDERED that Steven W. Soulé shall immediately pay the sum of $382.50 to Andria Vanessa Kusler, Debtor herein, in recognition of the remaining dollar amount of the exemption in the Vehicle.

IT IS FURTHER ORDERED that the Trustee shall, within fifteen (15) days of the date of this Order, file an amended final report distributing the remaining sums on hand to creditors as their interests may appear.